**Robert L. NORRIS, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–347.

United States Court of Appeals for Veterans Claims.

June 9, 1999.

Kenneth M. Carpenter, was on the brief, for the appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn R. Washington, Deputy Assistant General Counsel; and Richard Mayerick were on the brief for the appellee.

Before FARLEY, STEINBERG, and GREENE, Judges.

GREENE, Judge:

Robert L. Norris appeals a December 1996 Board of Veterans' Appeals (Board) decision that determined that clear and unmistakable error (CUE) was not committed in June 1987 and February 1989 VA regional office (RO) decisions. It also determined that no May 1986 RO decision existed to which CUE could be raised. On appeal, the appellant has not raised an issue concerning CUE in the May 1986 decision and this matter is deemed abandoned. *See Bucklinger v. Brown,* 5 Vet.App. 435 (1993). The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the Board's decision.

## I. FACTS

The appellant served in the U.S. Navy from June 1967 to September 1969. Record (R.) at 17. In September 1972, he filed a formal VA application for disability compensation. R. at 20. In September 1973, VA granted him service connection for anxiety neurosis at 30% disabling, effective September 1972; granted him temporary total disability for a period of hospitalization; and reduced his disability rating to 10% upon his discharge from the hospital. R. at 27–30, 32–33. Anxiety neurosis is "a psychoneurotic disorder characterized by anxiety ... often accompanied by physiological manifestations of fear (as sweating, cardiac disturbances, diarrhea, or vertigo)." WEBSTER'S MEDICAL DESK DICTIONARY 43 (1986). A May 1979 RO decision increased his disability rating for anxiety neurosis to 50%. R. at 41–42. In 1980, the Board denied a rating in excess of 50% and denied entitlement to a rating of total disability based on individual unemployability (TDIU). R. at 44–49.

In January 1981, the RO granted the appellant temporary total disability for his July 1980 hospitalization for anxiety neurosis. R. at 51. The decision noted that during his hospitalization the appellant was cooperative and received vocational counseling. When

discharged from the hospital, he was considered to have been "suitable for return to gainful employment"; there was no evidence of depression; he declared his intent to resume employment; and he was assigned a 30% rating. *Id.*

A February 1984 RO decision granted the appellant's claim for temporary total disability because of another hospitalization and increased his rating for anxiety neurosis to 70%. R. at 53–54. The decision also noted that the "staff physician expressed his opinion that the appellant was unable to sustain employment at this time." *Id.* For reasons unclear from the record, this rating decision was then forwarded to the Board for consideration. A March 1985 Board decision remanded the matter to the RO for further development. R. at 58–59. In June 1985, the RO again assigned a 70% rating (R. at 61) and returned the matter to the Board for further consideration (R. at 59). A November 1985 Board decision denied a rating in excess of 70%, denied a claim for TDIU, and awarded the appellant temporary total disability due to hospitalization from April 14 to May 8, 1984. R. at 63–69. The decision noted that the reasons for his hospitalization and his final diagnoses were marijuana dependence; chronic, continuous alcohol abuse; and borderline personality disorder. R. at 65. When released from the hospital, he was considered physically and mentally stable and capable of performing gainful employment and his 70% disability rating was continued. *Id.*

A March 1986 RO decision confirmed the appellant's 70% disability rating. R. at 73. Six months later, he was awarded temporary total disability for his hospitalization from April 3 to July 1, 1986, and his 70% rating was resumed. R. at 75–76. The RO decision noted that he had been admitted to the hospital because "he wants to deal with his anxiety," and that he could "resume his prehospital level of activities" after his release from the hospital. *Id.*

On April 7, 1987, the appellant was admitted to the Topeka, Kansas, VA Medical Center (VAMC) because of "complaints of increased anxiety." R. at 86–88. He was diagnosed as having, inter alia, anxiety disorder and major depression. *Id.* He was discharged from the VAMC on May 1, 1987, "indefinitely convalescent" but "able to resume his prehospital level of activities." R. at 88.

An April 30, 1987, letter from the Wichita, Kansas, RO notified the appellant that he would be scheduled to report for a physical examination to determine whether his "disability had improved." R. at 78. He replied with a letter to the RO requesting that the examination be scheduled in Topeka, Kansas, rather than Wichita, Kansas. R. at 82. On June 9, 1987, he reported for his VA-scheduled examination. Initially, he was evaluated by a VA social worker. She concluded: "This young man does appear to be exceedingly ill and probably so involved in his emotional disturbance he is not able to work at this time." R. at 94–96. He was also examined by Dr. Brian Romalis, a VA psychiatrist, who diagnosed him as having dysthymic disorder, generalized anxiety disorder, chronic cannabis abuse and dependency, and borderline personality disorder. R. at 98–100. Dr. Romalis strongly urged "a close investigation of his capacity to manage money from day-to-day [sic] be carried out in order to ensure that he is, in fact, capable." *Id.* He did not express an opinion regarding the appellant's employability, but did opine that the appellant was competent to manage his funds. R. at 100. A June 29, 1987, RO decision granted the appellant temporary total disability for this period of hospitalization (R. at 91–92) and continued his 70% disability rating thereafter. However, the decision did not discuss or acknowledge the social worker's June 9, 1987, opinion about his employability. *Id.* The next month, the RO again confirmed his 70% rating. R. at 102. These rating decisions were not appealed.

In November 1988, the appellant "voluntarily sought admission" to the Topeka VAMC for increasing anxiety and was diagnosed as suffering from generalized anxiety disorder. R. at 104–05. Upon his release from the VAMC the next month, Dr. George Penn, a VA physician, opined that the appellant was "capable of returning to prehospital activities immediately." R. at 105. A January 1989 RO decision awarded him tempo-

rary total disability for this hospitalization and implicitly continued his 70% rating. R. at 125. When this rating was reviewed again in February 1989, it remained at 70% effective January 1, 1989. R. at 128. This decision was not appealed. On April 20, 1990, the appellant again referred himself to the Topeka VAMC. R. at 106–07. Dr. Penn diagnosed him as having severe anxiety neurosis with depression and alcohol dependence. *Id.* In November 1990, an RO granted the appellant temporary total disability for his period of hospitalization and resumed his 70% rating thereafter. R. at 130–31.

From December 6, 1990, to January 4, 1991, the appellant was hospitalized again at the Topeka VAMC for rehabilitation from alcohol dependence. R. at 108–10. When the appellant was released, his VA physician, Dr. R. Walz, considered his employability questionable. *Id.* In March 1991, the appellant filed a Notice of Disagreement (NOD) to the November 1990 RO decision and contended that he should be "rated 100%." R. at 133. The RO issued a Statement of the Case (SOC). R. at 136–41. An April 1992 RO decision confirmed the 70% rating (R. at 143–46), and the RO issued a Supplemental SOC (SSOC) (R. at 148–55). In June 1992, an RO decision granted the appellant temporary total disability for his latest hospitalization, and again assigned him a 70% rating thereafter. R. at 157–58. The RO issued another SSOC (R. at 161–65), and he appealed to the Board in August 1992 (R. at 167).

In September 1994, the Board granted the appellant a TDIU rating under the newly promulgated 38 C.F.R. § 4.16(c) (1993) and awarded an effective date of April 20, 1990, the date of his Topeka VAMC hospitalization. R. at 170–76, 178–79. Specifically, the Board found "that the criteria for a 100 percent rating under Diagnostic Code 9400 have not been met." R. at 173. However, the Board noted that the appellant had not been gainfully employed since 1983 and that his inability to "function in a competitive work environment" had been noted by various VA examiners. R. at 173–74. In November 1994, the appellant asserted that CUE had been committed in RO decisions dated May 9, 1986, June 29, 1987, and Feb-

ruary 10, 1989. R. at 181. In June 1995, the RO found that CUE was not committed in the June 1987 and February 1989 decisions and that no May 9, 1986, VA decision existed. R. at 342–45. In July 1995, the appellant filed an NOD (R. at 347), and an SOC was issued (R. at 350–57). In August 1995, he appealed to the Board. R. at 359. In December 1996, the Board determined that no agency of original jurisdiction had made a decision in May 1986 and that the June 1987 and February 1989 RO decisions did not contain CUE. The Board acknowledged in its decision that "any communication from a claimant indicating an attempt to apply for a benefit administered by VA may be considered an informal claim." R. at 12 (citing 38 C.F.R. § 3.155(a)). However, it concluded that "there was no such communication from the veteran ... concerning TDIU prior to the rating decision[ ] of June 29, 1987." *Id.* The Board also concluded that at the time of the June 1987 decision, the appellant had not specifically asserted a claim of entitlement to TDIU and that no such claim had been pending. R. at 7. The Board also observed that "it is highly questionable whether a failure to adjudicate a pending claim would ever involve CUE." R. at 12. This appeal followed.

## II. APPLICABLE LAW

### A. VA Claim for Benefits

"A specific claim in the form prescribed by the Secretary ... must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary." 38 U.S.C. § 5101(a); *see also* 38 C.F.R. § 3.151(a) (1998). Generally such claims are initiated by a veteran's filing of an application for a specific benefit. A claim or application is a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit. *See* 38 C.F.R. § 3.1(p) (1998).

The VA administrative claims process recognizes formal and informal claims. A formal claim is one that has been filed in the form prescribed by the Secretary. Once filed, it will be reviewed for completeness and well groundedness. *See* 38 U.S.C.

§§ 5103(a), 5107(a). "Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by [VA], from a claimant... *may be* considered an informal claim.... Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution." 38 C.F.R. § 3.155(a) (1998) (emphasis added). When a claim has been filed that meets the requirements of 38 C.F.R. § 3.151 (i.e., formal claims for disability compensation under 38 U.S.C. § 5101(a)), "an informal request for increase or reopening *will be* accepted as *a claim.*" 38 C.F.R. § 3.155(c) (1998) (emphasis added). Also, 38 C.F.R. § 3.157(b)(1) (1998) provides that an informal claim for benefits "will" be initiated by a report of examination or hospitalization for previously established service-connected disabilities. 38 C.F.R. § 3.157(b)(1). Specifically,

> (b) Once a formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree, receipt of one of the following will be accepted as an informal claim for increased benefits or an informal claim to reopen.
>
> > (1) *Report of examination or hospitalization by Department of Veterans Affairs or uniformed services.* The date of outpatient or hospital examination or date of admission to a VA or uniformed services hospital will be accepted as the date of receipt of a claim.

38 C.F.R. § 3.157(b)(1); *see also Servello v. Derwinski,* 3 Vet.App. 196, 200 (1992) (holding VA medical examination report constituted an informal claim for total disability based on individual unemployability). This Court has held that if VA does not forward a formal application form to a claimant who has presented an informal claim under § 3.155(a), the one-year period for filing a formal application is not triggered, and the "informal claim must be accepted as the application for purposes of establishing the effective date under 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(*o*)(2)." *Quarles v. Derwinski,* 3 Vet. App. 129, 137 (1992); *see also Hamilton v. Brown,* 4 Vet.App. 528, 544–45 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994); *cf. Servello, supra.*

Once a claim is received, VA must review the claim, supporting documents, and oral testimony in a liberal manner to identify and adjudicate all reasonably raised claims. *See EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). Additionally, VA is required to apply all relevant law in adjudicating the claim even though not raised by the appellant. *See Shockley v. West,* 11 Vet.App. 208, 214 (1998) (citing *EF v. Derwinski, supra* ); *see also Collier v. Derwinski,* 2 Vet.App. 247, 251 (1992) (holding that although the appellant had not filed the specific form asking for individual unemployability, an informal claim was raised because he had continually stated he was unable to work due to his service-connected mental disorder); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (holding that VA was obliged to infer a claim for special monthly compensation where it "may be applicable and the veteran does not place his eligibility at issue"). Where such a review "reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit or, if appropriate, to remand the issue to the RO for development and adjudication of the issue." *Suttmann v. Brown,* 5 Vet.App. 127, 132 (1993); *see generally Servello,* 3 Vet.App. at 198–200 (discussing evidence that could show "a belief" by the veteran that he was entitled to TDIU).

### B. TDIU

Under 38 U.S.C. § 1155, the Secretary is authorized to promulgate the Schedule of Rating Disabilities. *See* 38 C.F.R. Part 4. The Schedule of Rating Disabilities provides the degrees of impairment of average earning capability caused by a specific disability or a combination of disabilities listed in the Schedule. *See* 38 C.F.R. § 3.321(a) (1998). Ratings are assigned as percentages of impairment of earning capability and are referred to as "schedular ratings." The schedule of ratings comprises ten grades of disability, with a maximum rating of 100%, which is considered a total disability rating. The Secretary also recognizes circumstances

that will entitle a veteran to a total disability rating although he is rated less than 100% disabled. *See* 38 C.F.R. § 4.16(a) (1998). If the veteran presents evidence that he is unable to secure a substantially gainful occupation as a result of a service-connected disability, he may be entitled to a TDIU rating. When the RO rendered the 1987 decision in this case, 38 C.F.R. § 4.16 (1987) provided:

(a) Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: *Provided* That, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: ... disabilities affecting a single body system, e.g., orthopedic, digestive, respiratory, cardiovascular-renal, *neuropsychiatric* ....

(b) It is the established policy of [VA] that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.

38 C.F.R. § 4.16 (second emphasis added); *see Holland (Lee) v. Brown,* 6 Vet.App. 443, 446 (1994).

In 1988, the Veterans' Administration (now the Department of Veterans Affairs) added paragraph (c) to section 4.16 to address mental disorders specifically. The VA added this paragraph because it believed that the application of section 4.16(a) to mental disorders was inconsistent with the rating criteria for mental disorders. *See* 53 Fed.Reg. 18099, 18100 (1988). The paragraph provided:

(c) The provisions of paragraph (a) of this section are not for application in cases in which the only compensable service-connected disability is a mental disorder assigned a 70 percent evaluation, and such mental disorder precludes a veteran from securing or following a substantially gainful occupation. In such cases, the mental disorder shall be assigned a 100 percent schedular evaluation under the appropriate diagnostic code.

*Id.* This regulation became effective March 1, 1989 (*see* 54 Fed.Reg. 4280, 4281 (1989)), and was in effect in 1994 when the Board granted the appellant TDIU effective April 20, 1990.

Section 4.16(c) did not clarify assignment of TDIU ratings as well as the Secretary had hoped. In *Johnson v. Brown,* this Court ordered the Secretary to submit a supplemental memorandum addressing the applicability of 38 C.F.R. § 4.16(c). 7 Vet.App. 95, 97 (1994). The Secretary responded:

The reasoning behind awarding a 100% schedular rating under section 4.16(c) for veterans having a mental disorder rated at 70% applies equally well in other cases involving mental disorders which are the cause of unemployability, regardless of whether another compensable service-connected disability is or is not present. The Secretary is aware that the 70% "requirement" of 4.16(c) may be superfluous in light of the fact that whenever unemployability is caused solely by a service-connected mental disorder, regardless of its current disability rating, a 100% schedular rating is warranted under section 4.132. Therefore, section 4.16(c) is not a limiting provision but an additionally encompassing provision, albeit perhaps, superfluous. Actually, it may be deemed more a procedur-

al device than a regulation which confers a substantive benefit.

*Id.*

Accordingly, in 1995, VA initiated action to delete section 4.16(c) because veterans with mental disorders could fairly be evaluated under section 4.16(a). *See* 60 Fed.Reg. 54825, 54830 (1995). Section 4.16(c) was deleted effective November 7, 1996. *See* 61 Fed.Reg. 52695, 52699 (1996). Sections 4.16(a) and (b) remained the same through 1998.

### C. CUE Claim

■ Under 38 C.F.R. § 3.105(a), a prior final decision on VA benefits must be reversed or amended when evidence establishes CUE. *See also* 38 U.S.C. § 5109A. For CUE to exist:

> (1) "Either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question.

*Damrel v. Brown,* 6 Vet.App. 242, 245 (1994) (quoting *Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992) (en banc)). Because we will hold in part III, below, that a final decision has not been made on a TDIU claim in this case, we will also hold that the question of review of a CUE claim is not involved in the disposition of this appeal.

### III. ANALYSIS

Preliminarily, the Secretary has moved to strike the appellant's reference (Appellant's Brief at 13) to and use of a nonprecedential decision, *Lundgren v. Brown,* No. 92–1072, 1994 WL 81572 (Vet.App. Mar.4, 1994), asserting that such use violates Rule 28(i) of the Court's Rules of Practice and Procedure (Rules). Secretary's Br. at 2. Rule 28(i) provides:

> Neither single-judge actions nor other actions of the Court which have not been published in the *Veterans Appeals Reporter* shall be cited as precedent. A party may refer to such actions of this Court only when the binding or preclusive effect of that action, rather than its quality as precedent, is relevant.

U.S. Vet.App. R. 28(i). Because it is clear that memorandum decisions generally have no binding or preclusive effect on the Court and that *Lundgren, supra,* should not have been cited or relied upon by the appellant's counsel, the Court grants the Secretary's motion.

Essentially, the appellant contends that CUE was committed in the June 1987 and February 1989 rating decisions because the RO failed to recognize reasonably raised informal claims for TDIU and failed to adjudicate them under 38 C.F.R. §§ 3.157, 3.303(a), 3.321(a), 3.340, and 4.16 (1998). Appellant's Br. at 12. (The Court notes that the regulatory sections in effect today are identical in every pertinent respect to those in effect throughout the history of this case.)

The Secretary concedes that neither the 1987 nor the 1989 RO decision considered a TDIU claim. Further, the Secretary contends that there was no need for the RO to discuss the evidence of unemployability in the record because no informal TDIU claim was raised or communicated. The Board also determined that no informal claim was raised or communicated. Without citing authority, the Secretary asserts that although 38 C.F.R. § 3.157 recognizes certain circumstances as creating an informal claim, section 3.157 is "self-limiting to claims involving increased ratings or reopenings, not TDIU." Secretary's Brief at 10–11.

The threshold questions are (1) do TDIU claims exist in this case and, (2) if so, were there final decisions on those claims that are subject to CUE revision? To answer the first question, we observe that VA initiated a medical examination of the appellant in order to determine if his disability had improved. Although an improvement in his condition would result in a reduction in compensation for disability, it also follows that if there had been an increase in severity, a concomitant

decision would have been in order as to whether there is a basis to increase the disability rating. *See, e.g.,* 38 C.F.R. § 3.327(a) (1998) (requiring reexamination by VA if a disability has improved or a material change in disability has occurred). The social worker's assessment of the appellant's unemployability due to his service-connected psychiatric disorder that was recorded in the medical examination report revealed that his condition had not improved. Indeed, this assessment raised a probability that his condition supported a claim for a TDIU rating. Because the appellant had a 70% service-connected rating for his anxiety neurosis since 1984, he met the threshold schedular criteria to be eligible for consideration for a TDIU rating under either the 1987 or 1989 version of section 4.16. Because he met those eligibility criteria, section 4.16 instructs that the adjudicating officer may assign a total disability rating "where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a).

We reject the Secretary's position that an informal claim for TDIU, which is in essence a claim for an increased rating, is not raised under these circumstances. The Secretary's position loses sight of VA's congressional mandate that VA is to "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." *Hodge v. West,* 155 F.3d 1356, 1362–63 (Fed. Cir.1998) (citing H.R.Rep. No. 100–963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794–95); *see also* H.R. REP. No. 105–52, at 4 (Apr. 14, 1997) (remarking on "the pro-claimant bias intended by Congress throughout the VA system"). Developing the claim "to its optimum" must include determining all potential claims raised by the evidence and applying all relevant law and regulation raised by that evidence. *See Shockley, Akles,* and *Collier,* all *supra.* In 1987 and 1989, section 4.16(a) provided for a TDIU rating for individuals assigned a 60% rating for a neuropsychiatric condition who also presented evidence that they were unable to secure or follow a substantially gainful occu-

pation as a result of that service-connected disability. The social worker's assessment, part of the medical examination, raised a question of the appellant's unemployability under section 4.16(a) that the RO was obliged to consider and decide. The RO failed to address this evidence of the appellant's unemployability. The Board relied on the proposition that a TDIU claim is a new claim, thereby requiring a communication from the claimant. However, under the VA statutory and regulatory scheme evidence of a veteran's unemployability arising from an already allowed service-connected disability is indeed evidence of an increase in the severity of that disability. *See Wood v. Derwinski,* 1 Vet. App. 367, 369 (1991) (holding that "claim for unemployability compensation was an application for 'increased compensation' within the meaning of [38 U.S.C.] § [51]10(b)(2)").

Thus, this case is unlike the general situation of original claims as to which a formal claim is generally required. *See Jones v. West,* 136 F.3d 1296, 1299 (Fed.Cir.1998) (holding that "a claim must be filed in order for any type of benefit to accrue or be paid," but not discussing the nature of the claim required, i.e., formal versus informal). As the Court suggested in *Wood, supra,* "We start with the premise that § 3.157(b) was intended to help a veteran avoid a procedural pitfall by directing that the mere submission of additional evidence is sufficient to initiate a claim." 1 Vet.App. 367, 369 (1991). Here, we have an adjudicated service-connected compensable psychiatric disorder and a VA examination report that § 3.157(b) *mandates* that the Secretary accept as an informal claim for a rating increase. 38 C.F.R. § 3.157(b) ("will be accepted"). That informal claim for a rating increase included a claim for the highest rating permissible, all the way up to 100%. *See AB v. Brown,* 6 Vet.App. 35, 38 (1993) ("on a claim for an original or an increased rating, the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and it follows that such a claim remains in controversy where less than the maximum available benefit is awarded"). A TDIU rating is not a basis for an award of service connection. Rather, it is merely an alternate

way to obtain a total disability rating without being rated 100% disabled under the Rating Schedule. *See, e.g., Parker v. Brown,* 7 Vet. App. 116, 118 (1994) ("claim for TDIU is based on an acknowledgment that even though a rating less than 100% under the rating schedule may be correct, objectively, there are subjective factors that may permit assigning a 100% rating to a particular veteran under particular facts"). In this case, the veteran presented an informal claim for the highest rating possible, including 100% by way of a TDIU rating (because he already had at least a 60% service-connected rating for his psychiatric disorder and there was evidence of record that indicated unemployability due to that disability). *See Parker* and *AB,* both *supra.*

What, then, is the connection between this § 3.157(b) informal TDIU claim and the requirement under 38 C.F.R. § 3.155(a) as to the filing of a formal claim form? The answer is provided by 38 C.F.R. § 3.155(c), which *mandates* that the Secretary accept an informal request for a rating increase "as a claim"; the Secretary *cannot* require the veteran to take any additional action in order to perfect that "claim"—as contrasted with an informal claim under 38 C.F.R. § 3.155(a), which would be applicable in a situation where the veteran had *not* previously filed a claim that met "the requirements of § 3.151 or § 3.152." 38 C.F.R. § 3.155(c); *see also* 38 C.F.R. §§ 3.151 (regarding claims for disability benefits), 3.152 (regarding claims for death benefits) (1998). Thus, the only real benefit to a claimant that paragraph (c) provides is that that claimant need not file another formal application for benefits as called for in § 3.155(a), i.e., need not start the process anew, in order to obtain an increase *if* he or she has already filed a formal claim pursuant to 38 C.F.R. §§ 3.151 or 3.152.

This distinction between requests for an increase pursuant to section 3.155(c) and informal claims made pursuant to section 3.155(a) (where no formal claim would previously have been filed), comports with the opinion of the U.S. Court of Appeals for the Federal Circuit in *Jones, supra,* which stressed that there be compliance with the requirement of 38 U.S.C. § 5101(a) that "[a]

specific claim in the form [not on *a* form] prescribed by the Secretary ... must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary." *Jones,* 136 F.3d at 1299 ("[s]ection 5101(a) is a clause of general applicability and mandates that a claim must be filed in order for any type of benefit to accrue or be paid"). Accordingly, *Jones* requires only that prior to the payment of VA benefits a specific claim must be filed *in compliance with the filing requirements prescribed by the Secretary in his regulations.* This requirement returns us to the preceding analysis of 38 C.F.R. §§ 3.155(a) and (c) and 3.157(b), which are provisions neither discussed nor even cited in the *Jones* opinion. In this case, the appellant had filed a formal claim for disability compensation under 38 C.F.R. § 3.151 in September 1972 (R. at 20) and, by so doing, thus obtained the procedural benefit bestowed by § 3.155(c). To conclude otherwise would be to ignore the mandatory nature of the language contained in that provision.

 Consistent with case law and the provisions of 38 C.F.R. §§ 3.155(c) and 3.157(b), we hold that when VA conducts a medical examination to determine, as in this case, whether the veteran's condition has improved in order to determine if a service-connected rating should be decreased or continued, if the results indicate an increase in severity in the disability, VA must then evaluate the circumstances as a claim for an increased rating. Further, the Court holds that when an RO is considering a rating increase claim from a claimant whose schedular rating meets the minimum criteria of section 4.16(a) and there is evidence of current service-connected unemployability in the claimant's claims file or under VA control, *see Bell v. Derwinski,* 2 Vet.App. 611, 612–13 (1992) (per curiam order), evaluation of that rating increase must also include an evaluation of a reasonably raised claim for a TDIU rating. *See Wood, supra.* In that situation, where those two criteria are satisfied, a well-grounded TDIU claim is included in every rating-increase claim, and VA would be required to adjudicate that well-grounded TDIU claim. *Cf. Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992) (claim for in-

creased rating is generally well grounded under 38 U.S.C. § 5107(a) when appellant indicates an increase in disability). Thus, because the appellant already was rated 70% disabled for his service-connected anxiety disorder, the evidence of his unemployability due to that disability reasonably raised a claim under 38 C.F.R. §§ 3.155(c) and 3.157(b), *see Servello* and *Quarles*, both *supra*, for a rating increase, to include a TDIU rating under 38 C.F.R. § 4.16(a), and this claim was never adjudicated by the RO in 1987 or 1989.

 With regard to the second question, the appellant argues that the RO's failure to adjudicate an informally raised TDIU claim constitutes a final disallowance of the claim; he cites to *In re Fee Agreement of Smith*, 10 Vet.App. 311, 314 (1997) (holding that failure of *Board* to adjudicate a claim before it constitutes denial of that claim for purposes of determining if attorney may lawfully be paid fee for representing claimant in VA adjudication process). We disagree. When, as here, VA has failed to comply during the adjudication process with certain procedural requirements mandated by law or regulation, the claim remains pending in that VA adjudication process. *See Fenderson v. West*, 12 Vet.App. 119, 132 (1999); *Holland (Sterling) v. Gober*, 10 Vet.App. 433, 436 (1997) (per curiam order). Therefore, there is no final adverse RO decision that can be subject to a CUE attack. *See Link v. West*, 12 Vet.App. 39, 45 (1998); *Best v. Brown*, 10 Vet.App. 322, 325 (1997). The TDIU claim reasonably raised in 1987 and 1989 thus remains pending at the RO.

To the extent that the appellant argues that the concept of *In re Fee Agreement of Smith*, *supra*, should be applied, beyond a fee-agreement context, to RO adjudications, the Court would be reluctant to apply the holding of *In re Fee Agreement of Smith* in a situation other than one where the Court is called upon to review a BVA decision applying 38 U.S.C. § 5904(c) to prohibit payment of counsel for representation before VA because counsel was not retained within one year after the date on which the Board "first makes a final decision in the case." 38 U.S.C. § 5904(c)(1); *see In re Fee Agreement*

*of Cox*, 11 Vet.App. 158, 162 (1998) (applying *In re Fee Agreement of Smith* in just such attorney-fee context). *But cf. Carpenter (Angeline) v. West*, 11 Vet.App. 140, 144 (1998) (applying *In re Fee Agreement of Smith* for purpose of determining whether subsequent BVA adjudication subsumed prior RO decision so as to insulate that RO decision from collateral attack on grounds of CUE).

The Board determined that no TDIU claim was reasonably raised to the RO and, therefore, that there was no CUE. We now hold as a matter of law that a TDIU claim was reasonably raised to the RO and was not adjudicated. Thus, there is no final RO decision on this claim that can be subject to a CUE attack. Accordingly, we will affirm the Board's decision for reasons that are at divergence with those given by the Board.

## IV. CONCLUSION

Upon consideration of the record on appeal and the pleadings of the parties, the Board decision determining that CUE was not committed in 1987 and 1989 RO decisions is AFFIRMED for the reasons that are contained herein. *See* 38 U.S.C. § 7104(d)(2).