Citation Nr: 1518725 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 05-31 893 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

2. Entitlement to service connection for left inguinal hernia.

3. Entitlement to service connection for left umbilical hernia.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Schulman, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had active service September 1968 until April 1975, and from April 1980 until September 1997.

These matters come before the Board of Veterans' Appeals (Board) on appeal from more than a dozen decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas between August 2004 and September 2014. 
The Veteran's claim for TDIU began with March 2004 claims for increased ratings regarding service-connected respiratory, sinus, shoulder, ankle, knee, and wrist disabilities. 

During the course of the appeals, the RO specifically denied the claim for TDIU in a September 2013 decision. The Veteran perfected an appeal of the denial, and in July 2012 and February 2014 the Board remanded the matter for additional development.
 
The issues of denial of service connection for a left inguinal hernia and a left umbilical hernia are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran was unable to obtain or maintain substantially gainful employment as a result of service-connected disabilities beginning February 1, 2013.


CONCLUSION OF LAW

Resolving reasonable doubt in the Veteran's favor, the criteria for TDIU have been met, effective February 1, 2013, and no earlier. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.7, 4.15, 4.16, 4.18, 4.19, 4.25 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Total Disability Rating Based on Individual Unemployability

The Veteran contends that his service-connected disabilities - ethmoid and maxillary sinusitis; restrictive airway disease; pes planus; degenerative joint disease (DJD) of the shoulders, knees, right ankle, right wrist, right third metacarpal; gastroesophageal reflux disease; dyshidrosis, tinea pedis and onychomycosis of the feet; left ear hearing loss; bilateral knee laxity; right inguinal hernia; and a right inguinal hernia scar - render him unable to maintain gainful employment. In his February 2013 application for TDIU, he reported that he had been employed with the U.S. Postal Service (USPS) from January 1999 until January 2013 as a custodian. He also reported that he completed high school and two years of college, and was educated/trained in "auto repair." In a March 2014 statement to VA, he reported that he last worked in January 2013.

TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.34l, 4.16(a) (2014). Where the combined rating percentage requirements are not met, entitlement to the benefits may be nonetheless considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). A claim for TDIU is essentially a claim for an increased rating insofar as it acts as alternate way to obtain a total disability rating without recourse to a 100 percent evaluation under the rating schedule. Norris v. West, 12 Vet. App. 413, 420-21 (1999). 

For the purposes of determining whether a veteran has a single 60 or 40 percent disabling disability, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, 
(4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

When determining the combined rating level for more than one disability, 38 C.F.R. § 4.25 directs the usage of the Combined Ratings Table, which reflects the efficiency of an individual as affected first by the most disabling condition, then by the less disabling condition, then by other less disabling conditions, if any, in the order of severity. 38 C.F.R. § 4.25, Table I (2014). Throughout the period on appeal, at least five of the Veteran's service-connected orthopedic disabilities have been rated not less than 10 percent each; these include DJD of the right shoulder (effective October 1, 1997), and DJD of the right ankle, right wrist, right knee, and left knee (all effective April 7, 2004). Of note, the right ankle was rated as 20 percent disabling effective April 7, 2004, and reduced to 10 percent effective March 1, 2009.

Application of the Combined Ratings Table reveals that four separate 10 percent ratings and one 20 percent rating combine to 48 percent, which is itself considered to be a single 50 percent rating. See Id. (the combined value of individual ratings is converted to the nearest number divisible by 10, and combined values ending in 5 will be adjusted upward). Even after the reduction of the right ankle rating to 10 percent, the Veteran's combined rating still reached 41 percent - i.e., 40 percent when rounded to the nearest number divisible by 10. As all five of the foregoing affect a single body system as defined under 38 C.F.R. § 4.16(a), the combined 40 to 50 percent rating acts as a single rating for purposes of determining whether the Veteran meets the schedular criteria for eligibility for TDIU under 38 C.F.R. §4.16(a); thus, throughout the period on appeal, the Veteran has had at least a single disability rated as 40 percent disabling or greater. 

In addition, effective April 7, 2004, the Veteran has had additional service-connected disabilities which have had a combined rating of 80 percent or more. Accordingly, as a threshold matter, the schedular criteria for eligibility for TDIU have been met throughout the period on appeal under 38 C.F.R. § 4.16(a).

Thus, the Board now turns to the matter of whether the Veteran's service-connected disabilities have rendered him unable to secure or follow a substantially gainful occupation for any period. When considering whether a veteran is employable, marginal employment shall not be considered substantially gainful employment, and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 
38 C.F.R. § 4.16(a). The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither non-service-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2009); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

Prior to retirement from the USPS, the Veteran had worked for 14 years as a custodian. During that time, the record reflects that he frequently took time off, and a January 2013 letter from the Customer Service Supervisor at the Post Office indicated that over the preceding year the Veteran had "called in to be excused from work due to illness . . . at least [four] to [six] days each month," and that he "was advised to either resign or be fired." Prior to this statement, a September 2005 note from USPS indicated that the Veteran "had numerous amounts of absenteeism both scheduled and unscheduled, because of respiratory problems. Due to difficulty in breathing [the Veteran] has needed to take unscheduled breaks and has also had to leave early from work after doing certain jobs. [The Veteran] always seems to have a really bad cough and at times the coughing leads to vomiting."

The record confirms a history of absenteeism; however, periodic absences from work alone do not amount to evidence that the Veteran is unemployable, particularly as the Veteran continued to remain substantially gainfully employed. Nonetheless, evidence of having been prescribed absence from work by a physician is certainly relevant to the appeal at issue, and the Board has considered such evidence accordingly. A December 2009 doctor's note prescribed that the Veteran "should be excused from work" from December 2009 until February 2010 - though no reason for such excuse was provided. In a February 2010 note, the Veteran's supervisor at USPS reported that the Veteran had been absent for 30 days between December 2009 and February 2010 for surgery and recovery. The record reflects that this was related to service-connected right inguinal hernia. During this period, the Veteran was awarded a temporary total rating (i.e., 100 percent) with Special Monthly Compensation. In November 2012, an orthopedic surgeon restricted the Veteran from working due to "pain in ankle and pain in knee" for four days.

Over the course of the period on appeal - more than a decade - the Veteran has undergone numerous VA examinations, including in January 2006 when he told a VA examiner that, although he "notes problems with squatting and climbing," he is able to "work[] with the pain," and had normal activities of daily living. In July 2009, the Veteran told a VA examiner that he had missed only three weeks of work over the prior year, and was "able to manage activities of daily living." On VA examination in May 2010, the Veteran reported working as a janitor for the USPS and endorsed having lost three weeks of work "because of his wheezing problem" over the preceding year. Nonetheless, he was able to manage activities of daily living, and had had no incapacitating episodes needing hospitalization or a ventilator.

During an October 2010 VA examination, the Veteran stated that he had missed about 30 days of work that year due to multiple conditions, including his service-connected knee disabilities; however, he reported that he was self-sufficient in day-to-day activities, and the only effect that service-connected DJD of the knees on his employment was absenteeism. In September 2011, on VA examination of the feet, the Veteran told the examiner that he had been employed full time for the past 10 to 20 years, and that during the prior 12-month period he had lost less than one week of time from work and that all of the lost time was "only for medical appointments regarding his feet."

In April 2012, a VA examiner concluded that the Veteran's non-service-connected spine and hip disorders impacted his employability to the extent that they limited his ability to lift more than 20 pounds, to stand from a seated position, to bend and turn, and his capacity for prolonged standing and walking. The VA examiner also assessed that the service-connected shoulder disability impacted the ability to work, specifically, the Veteran had difficulty in the following areas: lifting more than three pounds, reaching overhead, using certain tools, and conducing repetitive movements such as when emptying trash cans and using a screwdriver. 

Following VA examination in June 2013, the examiner concluded that service-connected disabilities of the shoulder, right wrist, gastroesophageal reflux disease, hernia, and hernial scar did not affect the ability to work. Furthermore, the combination of service-connected DJD of the knee and ankle, pes planus, and asthma "would prevent him from returning to work requiring heavy physical work such as his last job . . . making him unemployable in physically demanding positions. However, all of his service-connect[ed disabilities] do not make him unemployable in office sedentary jobs." The examiner went on to opine that, in his opinion, "the Veteran could re-train in a[n] office sedentary position, although he has done physically demanding work in the past."

On VA examination in April 2014, it was noted that the Veteran's inguinal hernia did impact his ability to work. After informing the examiner that he had retired from the USPS in 2013, the Veteran went on to state that he avoids lifting or carrying more than 20 pounds, but had no problem walking. He was careful not to bend over, and stays vertical using his legs to reach down for objects. He was unable to kneel or squat due to knee disabilities, and pushing, pulling, climbing, and reaching were impaired due to other service-connected disabilities.

While the Board finds the June 2013 VA examiner's opinion probative to the extent that it was reached following consideration of the entire record (including the Veteran's VA treatment records), and an in-person assessment of the Veteran, the value of the report - which stretches for one hundred pages - is somewhat limited to the extent that the examiner concluded that the Veteran could "re-train in a[n] office sedentary position." Specifically, the examiner, a medical physician rather than a vocational expert, failed to elaborate on how the Veteran's decades-long history of employment in physical labor fields, might prepare him to be trained for a sedentary employment, or to account for the Veteran's educational history in arriving at the foregoing conclusion.

The Board has carefully considered how to weigh statements from the Veteran's employer indicating that he was forced to retire or resign due to high levels of absenteeism, and finds such report to be highly probative, and of at least equal value in establishing that the Veteran's service-connected disabilities caused him lose his job, on an other than voluntary basis. While the Veteran has multiple non-service-connected disabilities, including low back, hip, foot, elbow, left arm, and cardiac disorders, his service-connected disorder are also numerous, and the evidence is at least in equipoise as to whether such disabilities have rendered him unable to work.

Accordingly, resolving doubt in the Veteran's favor the Board concludes that the Veteran's service-connected disabilities have rendered him unemployable since he ceased working for the USPS in January 2013. As the Veteran was substantially gainfully employed prior to that date, the Board finds that entitlement to TDIU is necessarily precluded by the facts for any earlier period. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7.

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Generally, where the Board is granting in full the benefits sought on appeal, there remains no duty to notify or assist a veteran. Here, however, the Board is affording the Veteran only a partial grant, to the extent that TDIU is being granted for only a portion of the period on appeal. Thus, consideration of whether VA fulfilled its duties to notify and assist remain pertinent.

Numerous notice letters were sent to the Veteran, including in January 2013, prior to the initial adjudication of the TDIU claim on appeal. Notice sent to the Veteran included descriptions of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

VA also has a duty to assist an appellant in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2014); see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim").

The Board finds that VA has satisfied its duty to assist by acquiring service records as well as records of medical treatment. These pertinent records have been associated with the Veteran's claims file and reviewed in consideration of the issues before the Board. The duty to assist was further satisfied by multiple VA examinations, including in July 2009, May 2010, October 2010, March 2011, September 2009, April 2012, June 2013, April 2014, and May 2014. Over the course of these examinations, examiners conducted physical examinations of the Veteran, were provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. 

Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2014); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). Based on the foregoing, VA has fully met its duties to notify and assist the claimant with the development of the claims and no further notice or assistance is required.

Finally, in its most recent remand in February 2014, the Board ordered additional development which included: contacting the Veteran and asking him to clarify whether he is currently employed, either by the USPS or any other employer; contact the USPS directly and determine the status of the Veteran's employment, as well as obtaining any available records relating to any workers compensation claims that the Veteran may have filed with the USPS; and readjudicating the claim with the issuance of a supplemental statement of the case. 

Since the February 2014 remand, the ordered development was completed. In March 2014 the RO sent the Veteran a letter asking him to clarify his employment status and to complete an authorization form allowing USPS to release of information to VA. The Veteran responded to the inquiry, and enclosed the required authorization. VA sent two letters to USPS at the address identified by the Veteran seeking additional information. The initial letter, from October 2014, went unanswered, and a follow-up letter to the same address was returned as undeliverable. Although efforts were unproductive, the Board nonetheless finds that the RO substantially complied with the remand orders with respect to its attempts to contact USPS. VA's duty to assist in developing the facts and evidence pertinent to a veteran's claim is not a one-way street, and it is the responsibility of veterans to cooperate with VA with regard to development. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). In this case, VA utilized the contact information provided by the Veteran in its attempts. Thus, given that such information was provided by the Veteran himself, VA fulfilled its duty to attempt to obtain the records in question, and has no additional duty with regard to such records. See Caffrey v. Brown, 6 Vet. App. 377, 383 (1994); Olson v. Principi, 3 Vet. App. 480, 483 (1992).

Regarding efforts to obtain evidence of workers compensations claims, a December 2014 letter from the Texas Department of Insurance, Division of Workers' Compensation indicated that they could not locate any workers compensation file for the Veteran. Based on the foregoing, the Board finds that the RO substantially complied with the February 2014 remand directives, and the Board has properly proceed with the foregoing decisions. See Stegall v. West, 11Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).


ORDER

TDIU is granted, effective February 1, 2013 and not earlier.


REMAND

Statement of the Case

In September 2014 the RO denied service connection for a left inguinal hernia and a left umbilical hernia. The Veteran submitted a timely notice of disagreement with these determinations in October 2014. Since that time, the RO sent the Veteran a letter seeking clarification as to whether wished for these matters to be addressed by a Decision Review Officer (DRO) on readjudication, and in December 2014 he responded that he would like such a review.

When a veteran has filed a notice of disagreement and there is no statement of the case (SOC) on file for that issue, the Board must remand, not refer, the issue to the RO for issuance of a SOC. Manlincon v. West, 12 Vet. App. 238 (1999); Godfrey v. Brown, 7 Vet. App. 398 (1995); Archbold v. Brown, 9 Vet. App. 124 (1996). Here, in order to rectify the due process deficiency, the matters of service connection for left inguinal and umbilical hernias must be remanded for the preparation and issuance of a SOC.


Accordingly, the issues of service connection for a left inguinal hernia and a left umbilical hernia are REMANDED for the following action:

Issue a statement of the case addressing the issues of service connection for a left inguinal hernia and a left umbilical hernia. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs