Citation Nr: 1504641 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 11-25 866 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to higher initial ratings, greater than 10 percent for Posttraumatic Stress Disorder (PTSD), prior to November 29, 2010, greater than 10 percent from February 1, 2011 until September 6, 2012, and greater than 30 percent thereafter.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

J. Schulman, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had active service from March 1969 to March 1971.
 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2010 decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbus, South Carolina, which granted service connection for PTSD and assigned a 10 percent initial rating. The Veteran appealed the initial rating assigned in this decision, and the matter is now before the Board. Prior to certification to the Board, the Veteran's claims file was transferred to the jurisdiction of the RO in Atlanta, Georgia.

During the pendency of the appeal, a temporary total (e.g., 100 percent) rating was assigned for a period of in-patient mental health treatment, under 30 C.F.R. § 4.29 (2014) from November 29, 2010 to January 31, 2011. The 100 percent rating during this period represents the highest rating which may be assigned; thus, the immediate appeal relates only to those periods during which a less than 100 percent rating is in effect, as reflected in the issue indicated above.

The Veteran testified before the undersigned Veterans Law Judge at a hearing held in May 2013. A transcript of the hearing has been associated with the claims file. This matter was remanded by the Board in October 2013. 


FINDINGS OF FACT

1. Throughout the entire initial rating period, PTSD has been productive of sleep disturbance, with nightmares, and depressed affect which results in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. 

2. The Veteran is not rendered unable to obtain or maintain substantially gainful employment as a result of service-connected disabilities.


CONCLUSIONS OF LAW

1. The criteria for an initial rating of 30 percent, but not higher, for PTSD were met prior to November 29, 2010, and have continued to be met since February 1, 2011. 
38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.130, Diagnostic Code 9411 (2014).

2. The criteria for TDIU have not been met for any period. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.15, 4.16, 4.18, 4.19, 4.25 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Initial Ratings for PTSD

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects the ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2014). 

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3 (2014). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). Furthermore, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam)

Additionally, the evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran's appeal for higher initial ratings for PTSD is an appeal from the initial assignment of a disability rating following the establishment of service connection. When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found; such separate disability ratings are known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). 

In the March 2010 decision on appeal, the Veteran was awarded service connection for PTSD and granted an initial evaluation. Staged ratings were subsequently assigned, and PTSD was rated as 10 percent disabling effective November 30, 2009, and 30 percent disabling effective September 6, 2012. During the period between November 29, 2010 and January 31, 2011, the Veteran was in receipt of a temporary total rating under the provisions of 38 C.F.R. § 4.29. 

PTSD is evaluated under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, Diagnostic Code (DC or Code) 9411. Under this General Rating Formula, a 10 percent rating is assigned for a showing of occupational and social impairment due to mild or transient symptoms with decreased work efficiency and ability to perform occupational tasks only during periods of significant stress, or if the veteran's symptoms are controlled by continuous medication. 38 C.F.R. § 4.130, DC 9411 (2014).

A 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, and recent events). Id.

A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as a flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); or the inability to establish and maintain effective relationships. Id.

Finally, a 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for the names of close relatives, own occupation, or own name. Id.

After reviewing the entire claims file, the Board finds that the Veteran's PTSD has been 30 percent disabling, but no greater, throughout the periods on appeal, to include the initial period on appeal prior to September 2012. Specifically, PTSD was productive of only mild or transient symptoms, including sleep disturbance and depressed affect. Symptoms have not, however, resulted in occupational and social impairment with reduced reliability and productivity.

On mental health consultation in November 2009, the Veteran presented as alert, cooperative, and oriented to person, place, time, and situation. He maintained eye contact, and described his mood as "stressed." Affect was somewhat blunted, congruent with a depressed mood. The Veteran denied any suicidal or homicidal ideation, and there was no evidence of suicidal thought or behavior. Speech was clear and normal in rate and volume, and there was no evidence of delusions or hallucinations. The Veteran's thought process was relevant and logical, and cognition and memory were grossly intact, while judgment and insight appeared adequate. In an addendum report, it was noted that the Veteran endorsed ongoing nightmares related to specific combat experiences including seeing a man run over by a tank during service.

A VA outpatient mental health note in December 2009 indicated that the Veteran continued to report a depressed mood. The Veteran was having ongoing night sweats and vivid nightmares of specific combat experiences at least three to four times a week. He had reduced interest and motivation relating to his job, and indicated that he had quit working as car salesman one and a half months prior because the was asked to sign an agreement decreasing his wage due to decreased job performance. The evaluating physician reported that the Veteran was alert and oriented with good eye contact, and clear, normal speech. Affect was again somewhat blunted, and the Veteran continued to deny any suicidal or homicidal ideation. There was no evidence of psychosis, thought process was relevant and logical, cognition and memory were grossly intact, and judgment and insight appeared adequate.

On VA examination in January 2010, the Veteran reported that he was living with his wife of 39 years, and indicated that a typical day's activities included household chores, watching television, sleeping, reading, and doing errands. The Veteran enjoyed to fish with a friend on occasion, and he visits with his grandchildren. He went on to report that he and his wife attend church and have occasional social activities, but the Veteran felt that he was socially withdrawn. Night sweats and bad dreams about the in-service death of a friend were endorsed, and such dreams occurred two to three times a week on a variable basis, though it had "been a while" since having had such dreams. The Veteran endorsed problems with irritability and anger management. During his examination, the Veteran was polite and cooperative, with appropriate and non-constricted affect. The examiner opined that "[t]here were no evident signs of psychosis or other mental disorders," and that the Veteran was without impartment of thought processes. The examiner went on to describe the Veteran's PTSD symptoms as "minimal" and effectively controlled with medication.

A VA readjustment counseling therapist familiar with the Veteran provided a report in March 2010 which indicated that symptoms had recently been exacerbated by the loss of his job after thirty consecutive years of employment. The report also indicated that the Veteran "has acknowledged that he has spent most of his adult life as a chronic work alcoholic who has always used his work as a car salesman to drown his feelings," but that "[t]he loss of this crutch has caused [him] to feel the need to isolate, think negative thoughts to include suicide (occasionally) and deal with issues using anger as his primary tool." The Veteran was reportedly in therapy regarding anger management, feelings of grief, and developing effective coping skills to better manage his PTSD. 

In a December 2010 mental health record, the Veteran was reportedly appropriately groomed, with good hygiene. He was cooperative, however his mood was dysphoric, depressed, and anxious. The Veteran exhibited affect congruent with the content of his speech, and there was no evidence of hallucinations. Though process was logical, organized, and coherent, and both insight and judgment were good.

In April 2011, it was reported that the Veteran had been discharged from a VA PTSD program at the end of January 2011, but that he continued to receive psychotherapy at a VA facility. There were no current complaints, and the Veteran had been "doing well with his psychotherapy." He was alert and well oriented, euthymic, pleasant, cooperative, conversant, and responsive, and his thought processes were both relevant and coherent. Judgment and insight were intact, and there were no suicidal ideations or hallucinations.

On follow up in June 2012, the Veteran related that he was feeling well, and was without mental health complaints. He was compliant with his medications, and was alert, oriented, euthymic, pleasant, and conversant. Thought processes were relevant and coherent, and his judgment and insight were intact. The Veteran denied suicidal or homicidal ideations, in addition to hallucinations, and his mood was stable.

The Veteran's PTSD is currently rated as 30 percent disabling, effective September 6, 2012, the date of a VA mental health outpatient note reflecting reports of exacerbation of bouts of anxiety, beginning "a few weeks ago" with the death of a close relative. The Veteran was alert and oriented, but exhibited a flat affect due to recurrent pain. The healthcare provider described the Veteran as "pleasant and conversant," with relevant and coherent thought processes, and intact judgment and insight. There was no reported suicidal ideations or hallucinations, and the Veteran's mood was stable. An additional outpatient treatment note, only five days later, showed that the Veteran was "feeling well this morning [with] no [mental health] complaints." He presented as alert, oriented, euthymic, pleasant and conversant. Thought processes were relevant and coherent, and his judgment and insight were intact. The Veteran continued to have no suicidal or homicidal ideations, or any hallucinations and his mood was stable.

In January 2013 and June 2013 mental health evaluations, the Veteran was alert and oriented. He is also euthymic, pleasant, and conversant. Thought processes were relevant and coherent, and his judgment and insight were intact. The Veteran denied suicidal ideations or hallucinations, and his mood was stable. 

On evaluation in December 2013, the Veteran was without mental health complaints, and "had no new psychiatric complaints." He was alert and well oriented in all spheres, and remained euthymic, pleasant and conversant. Thought processes were relevant and coherent, and the Veteran's judgment and insight were intact. Additionally, the Veteran had no suicidal or homicidal ideations or hallucinations, and his mood remained stable. Given his lack of mental health symptoms on presentation to the mental health clinic and the provider's assessment that the Veteran had been "psychiatrically stable for over a year," it was suggested that the Veteran be "discharged back to his [primary care physician.]"

During a January 2014 VA examination, the examiner concluded that the Veteran had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress or symptoms controlled by medication. The Veteran reported that he was still married and had three sons whom he saw three to four times a year. The Veteran endorsed worsening PTSD symptoms, though the VA examiner noted that treatment records suggest symptoms were stable and mild in severity. Symptoms include recurrent distressing dreams, avoidance behavior, persistent negative emotional state, with marked diminished interest in significant activities, irritable behavior and angry outbursts, sleep disturbance, and anxiety. PTSD was said to cause significant distress or impairment in social, occupational, or other important areas of functioning.

In September 2014 the Veteran presented with recurrent insomnia and nightmares. During the day, he was nervous, wired, and depressed. He had no other mental health complaints, and was observed to be euthymic, pleasant, and fluently conversant. Thought processes were relevant and coherent, and the Veteran - once again - denied suicidal or homicidal ideations, as well as hallucinations, and his mood was stable.

As the foregoing shows, the Veteran's PTSD symptoms have more closely reflected a 30 percent rating throughout entire period on appeal, to include prior to September 2012. Nonetheless, a rating of greater than 30 percent has not been warranted at any time. Again, in order to warrant such a rating, PTSD must be productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as a flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, DC 9411.

The record reflects that the Veteran's symptoms have been mild and largely limited to a depressed affect, with sleep impairment manifest by recurrent nightmares. In a September 2011statement, the Veteran reported suffering from night sweats, nightmares, and frequent panic attacks. His "relationships have suffered due [to PTSD] and [he has] impaired impulse control which has cost [his] jobs." The Veteran also endorsed poor concentration, as well as memory impairment. During his hearing before the undersigned, the Veteran endorsed nightmares, suicidal ideation, and panic attacks at least once a week. To the extent that such symptoms are capable of lay observation, his endorsements are competent. Layno v. Brown, 6 Vet. App. 465 (1994). However, the Board notes that the Veteran's reports to medical professionals, and the objective observations of healthcare providers, are largely inconsistent with his written and oral testimony regarding symptomatology. While competent, the Board finds the Veteran's numerous reports to healthcare providers - in which he denied symptoms such as panic attacks and suicidal ideation - to be of greater prohibitive in determining the severity of PTSD symptoms, than his written and oral testimony made in pursuit of his claim.

In evaluating the Veteran's level of disability, the Board has considered the Global Assessment of Functioning (GAF) scores as one component of the overall disability picture. GAF is a scale used by mental health professional and reflects psychological, social, and occupational functioning on a hypothetical continuum of mental health illness and is relevant in evaluating mental disability. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996), citing Diagnostic and Statistical Manual of Mental Disorders (5th ed.) (DSM-V).

Particularly informative of the Veteran's level of disability is the conclusion of a VA examiner in January 2010 that the Veteran's GAF score was 65. GAF scores between 61 and 70 represent some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships. DSM-V. Accordingly, the Board finds that the Veteran's GAF score further supports the findings that symptoms warrant a rating of 30, but not higher, throughout the periods on appeal.

Accordingly, the Board concludes that the Veteran's PTSD has been 30 percent disabling, but not greater, throughout the rating periods on appeal. All evidence has been considered and there is no doubt to be resolved. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

The schedular rating criteria used to rate the Veteran's service-connected PTSD above, reasonably describe and assess the Veteran's disability level and symptomatology. The schedular rating criteria, Diagnostic Code 9411, specifically provides for disability ratings based on a combination of history and clinical findings. In this case, the evidence adequately reflects the symptoms of the Veteran's PTSD include his primary symptoms; nightmares and a depressed mood. These symptoms are part of or similar to symptoms listed under the schedular rating criteria. The schedular rating criteria include occupational and social impairment, as indicated by reduced reliability and productivity, and as caused by specific psychiatric symptoms. The schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria. Mauerhan, 16 Vet. App at 442 ; see also 38 C.F.R. § 4.21 (2014). Additionally, the Board has considered GAF scores, which are incorporated through the DSM-V as part of the schedular rating criteria, as reflective of the degree of severity of psychiatric symptoms or overall functional impairment caused by the acquired psychiatric disorder. For these reasons, the Board finds that the schedular rating criteria are adequate to rate the Veteran's PTSD, and referral for consideration of an extra-schedular evaluation is not warranted.

Additionally, because service connection has not been established for one or more disabilities other than PTSD, the Board need-not consider whether the collective impact or combined effect of more than one disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Based on the foregoing, the Board finds the schedular evaluation is adequate, and referral for consideration of extra-schedular evaluation is not required. 38 C.F.R. § 3.321; Thun, 22 Vet. App. 111.

Total Disability Rating Based on Individual Unemployability

The Veteran contends that his service-connected PTSD renders him unable to maintain gainful employment. His total combined rating has been 30 percent throughout the period on appeal, and in a November 2013 statement, the Veteran indicated that he stopped working as a car salesman in 2009 because he could no longer "deal with the public frequently for extended periods," due to "anxiety, anger and feelings of grief." During his May 2013 hearing before the undersigned, the Veteran reported that he "wasn't able to work" and believes his PTSD caused him to lose his job - in part because "[a]t the end, you know, I got to the point where I was so angry I'd just walk off instead of getting in trouble." The Veteran had worked for the same car dealership since 1982 or 1983 at the time that his employment ended. While the Veteran indicates that he was forced to resign from his position, a June 2014 signed document from a "payroll admin" at his former place of employment indicated that he had retired in 2009.

TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.34l, 4.16(a) (2014). 

Marginal employment shall not be considered substantially gainful employment, and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2009); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

A claim for TDIU is essentially a claim for an increased rating insofar as it acts as alternate way to obtain a total disability rating without recourse to a 100 percent evaluation under the rating schedule. Norris v. West, 12 Vet. App. 413, 420-21 (1999). 

Initially, the Board notes that the Veteran has not met the schedular criteria for the award of TDIU at any time. Specifically, other than that period during which he received a temporary total evaluation for PTSD (his only service-connected disability), the disability has been rated as 30 percent disabling. Nonetheless, where the combined rating percentage requirements are not met, entitlement to the benefits may be nonetheless considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b).

The only evidence of record suggesting that PTSD renders the Veteran unable to secure and follow a substantially gainful occupation by reason of his only service-connected disability - PTSD - are the Veteran's own lay statements. However, while the Veteran may genuinely feel that he is no longer able to work due to PTSD, this is a complex determination well beyond the scope of his lay competence. Accordingly, his assertions as such carry little probative weight in substantiating his claim. Layno, 6 Vet. App. 465.

As noted above, in December 2009 the Veteran reported having left his job as a car salesman one and a half months prior after being asked to sign an agreement decreasing his wage due to decreased job performance. Of great probative value is the opinion of a VA examiner who, in a July 2014 addendum opinion to his January 2014 opinion, stated that the Veteran's "PTSD symptoms effect, but do not preclude, his ability to maintain gainful employment." In arriving at this opinion, the examiner pointed to his prior conclusion that the Veteran had decrease work efficiency and a decreased ability to perform occupational tasks only during periods of significant stress. 

In a February 2010 application to the Social Security Administration, the Veteran indicated that he had completed two years of college, and had completed no specialized job training, or trade/vocational schooling. The Board has reviewed the record and - considering the Veteran's occupational, educational, and disability history - finds that the weight of the evidence reflects that Veteran is not unable to secure and follow a substantially gainful occupation due to his service-connected PTSD alone. To the limited extent that the criteria for TDIU may have been met during the Veteran's temporary total rating for PTSD, as that was the Veteran's only service-connected disability, VA need not consider whether entitlement to TDIU during that period was warranted. Bradley v. Peake, 22 Vet. App. 280 (2008). See 75 Fed. Reg. 11230 (March 10, 2010) ("The logic of Bradley suggests that if a Veteran has a schedular total rating for a particular disability and subsequently claims TDIU for a separate disability, VA must consider the TDIU claim despite the existence of the schedular total rating and award SMC under 114(s) if VA finds the separate disability supports a TDIU rating independent of the other 100-percent disability rating" (emphasis added)).

Accordingly, the preponderance of the evidence is against the claim, there is no doubt to be resolved. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Notice letters were sent to the Veteran in December 2009 and November 2013, prior to the initial adjudications of the claims on appeal. Notice sent to the Veteran included descriptions of what information and evidence must be submitted to substantiate the claims, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claims to the RO. The content of the letters complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). Moreover, in a hearing before the undersigned, the presiding Veterans Law Judge clarified the issues on appeal and identified potentially relevant additional evidence that the Veteran may submit in support of the claims. These actions by the undersigned satisfy the obligations imposed by 38 C.F.R. § 3.103. See Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

Once service connection is granted the claim is substantiated, and additional notice is not required. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims). Based on the foregoing, adequate notice was provided to the Veteran prior to the transfer and certification of this case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), and no further notice is needed under applicable VA laws and regulations. 

VA also has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2014); see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . or all [Social Security Administration] disability records must be sought - only those that are relevant to the veteran's claim").

The Board finds that VA has satisfied its duty to assist by acquiring service records as well as records of treatment in addition to records from the Social Security Administration (SSA). These pertinent records have been associated with the Veteran's claims file and reviewed in consideration of the issues before the Board. The duty to assist was further satisfied by VA examinations in January 2010 and January 2014 during which examiners conducted physical examinations of the Veteran, were provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2014); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). Based on the foregoing, VA has fully met its duties to notify and assist the claimant with the development of the claim and no further notice or assistance is required.
 
Finally, in October 2013 the Board remanded the issue of entitlement to higher initial evaluations for PTSD, with orders for additional development, including retrieval of VA treatment records and SSA records, as well as a VA examination with opinion regarding the Veteran's employability. Since that time, the sought records have been associated with the claims file and in January 2014 a VA examination was completed - in addition to an addendum opinion which was provided in July 2014. With regard to the VA examination and addendum, the Board had ordered that the examiner fully describe the Veteran's current level of PTSD symptomatology, and indicate whether the Veteran's level of symptomatology has substantially changed during any period since November 2009. While the examiner did not "fully describe" the Veteran's historical levels of symptomatology, he made specific statements regarding the stability of symptoms, indicating that the Veteran's "medical records are very consistent in noting that the [Veteran's] PTSD symptoms are stable and therefore mild in terms of severity. In fact his symptoms are so well controlled that he was transferred from mental health over to primary care but he preferred to continue to be seen for follow up in mental health." The Board finds that the foregoing statements substantially complied with the Boards request for a description of Veteran's historical levels of symptomatology to the extent that it adequately illustrated a lack of change from the past into the present. 

Additionally, the Board requested that the examiner elicit from the Veteran a full work and educational history, and provide an opinion as to whether the Veteran is unable to obtain or maintain substantially gainful employment due only to his service-connected PTSD. While the examiner did not report - in writing - a description of the Veteran's full work and educational history, the Board notes that by the time of the July 2014 addendum opinion, the Veteran's SSA records had been added to the file. Because these records reflected the Veteran's educational and occupational histories, a complete recounting of these histories by the examiner was rendered unnecessary.

Having reviewed all actions taken since the October 2014 remand, the Board finds that the RO substantially complied with the Board's directives and thus has properly proceed with the foregoing decisions. See Stegall v. West, 11Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).



ORDER

An initial rating of 30 percent, and no higher, for PTSD disability is granted prior to November 29, 2010, and from February 1, 2011. 

TDIU is denied.




____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs