http://www.va.gov/vetapp16/Files3/1621735.txt

Citation Nr: 1621735 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 08-07 937 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona

THE ISSUES

1. Entitlement to a higher (i.e., compensable) initial rating for hemorrhoids.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

J. Schulman, Counsel

INTRODUCTION

The Veteran had active service with the United States Army from October 1959 through August 1980. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from June 2007 and November 2014 decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona.
 
The Veteran testified before the undersigned Veterans Law Judge at a hearing held in Phoenix, in June 2010. A transcript of the hearing has been associated with the claims file.

FINDINGS OF FACT

1. Throughout the initial rating period, hemorrhoids have been of mild to moderate severity hemorrhoids, with periodic bleeding, but hemorrhoids have not been large or thrombotic, irreducible, productive nor of excessive redundant tissue evidencing frequent recurrences.

2. The Veteran is not rendered unable to obtain or maintain substantially gainful employment as a result of his service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for hemorrhoids have not been met or more nearly approximated at any time during the rating period on appeal. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.114, Diagnostic Code 7336 (2015).

2. The criteria for TDIU have not been met at any time during the period on appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.15, 4.16, 4.18, 4.19, 4.25 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). A notice letters were sent to the Veteran in January 2007 and June 2010. The notice included descriptions of what information and evidence must be submitted to substantiate the claims, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claims to the RO. The content of the letters complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b).

In a hearing before the undersigned, the presiding Veterans Law Judge clarified the issues on appeal and identified potentially relevant additional evidence that the Veteran may submit in support of the claims. These actions by the undersigned satisfy the obligations imposed by 38 C.F.R. § 3.103 (2015). See Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

The Veteran's appeal regarding service-connected hemorrhoids arises from an appeal of the initial evaluation following the grant of service connection. Once service connection is granted the claim is substantiated, and additional notice is not required. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims). Based on the foregoing, adequate notice was provided to the Veteran prior to the transfer and certification of this case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), and no further notice is needed under applicable VA laws and regulations. 

VA also has a duty to assist an appellant in the development of the claim. VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015); see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim").

VA has satisfied its duty to assist by acquiring service records as well as records of private and VA treatment to the extent that such records have been identified by the Veteran. These pertinent records have been associated with the Veteran's claims file and reviewed in consideration of the issues before the Board. The duty to assist was further satisfied by VA examinations in February 2010, June 2010, April 2013, November 2013, and July 2015 when examiners conducted physical examinations, were provided the claims file for review, recorded his history, and provided factually supported and explained opinions. VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2015); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).

In September 2010 the Board remanded appeals for a higher initial rating for hemorrhoids and entitlement to TDIU for additional development, including retrieval of outstanding treatment records, completion of VA examinations on the matters of severity of hemorrhoids and occupational impact of the Veteran's service-connected disabilities, and sending the Veteran a copy of VA Form 21-8940, Veterans Application for Increased Compensation Based on Unemployability. The RO substantially complied with the remand directives regarding and the Board may properly proceed with the decisions below. See Stegall v. West, 11Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).

Initial Rating for Hemorrhoids

The Veteran's appeal for a higher initial rating for hemorrhoids is from the initial assignment of a disability rating following the establishment of service connection. When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods in accordance with the facts found; such separate disability ratings are known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). 

Disability evaluations are determined by evaluating the extent that a veteran's service-connected disability adversely affects the ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2015). 

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3 (2015). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). Further, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam).

Additionally, the evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran was awarded service connection for hemorrhoids and granted an initial noncompensable (i.e., zero percent) evaluation effective October 26, 2006. The Veteran's hemorrhoid disability is rated under 38 C.F.R. § 4.114, Diagnostic Code (DC or Code) 7336. Under this Code, a noncompensable rating is warranted where hemorrhoids are mild or moderate in degree. A 10 percent rating is warranted where they are large or thrombotic, irreducible, with excessive redundant tissue, evidencing frequent recurrences, and a maximum 20 percent rating is warranted where there is persistent bleeding with secondary anemia, or with fissures. 38 C.F.R. § 4.114, DC 7336 (2015).

Descriptive words such as "mild" and "moderate" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6 (2015). The use of descriptive terminology by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision. 38 U.S.C.A. § 7104(a) (West 2014); 38 C.F.R. §§ 4.2, 4.6 (2015).

At no time during the rating period on appeal has the service-connected hemorrhoid disability been compensably disabling. Specifically, the disorder has been productive of mild to moderately severe hemorrhoids, with periodic bleeding, but hemorrhoids have not been large or thrombotic, irreducible, not productive of excessive redundant tissue evidencing frequent recurrences.

The Veteran has asserted, including in a February 2008 statement, that his current hemorrhoids are less severe than during service in 1972 and 1973. He reports successfully treating them with over-the-counter medications, and argues that a compensable evaluation "is warranted because hemorrhoids do exist, [and] blood clots are retained and they frequently reoccur." During his June 2010 hearing before the undersigned, the Veteran endorsed external hemorrhoids, and testified that symptoms included burning, aching, itching, and bleeding. Stinging and burning sensations happened "every day because it only happens when [he takes] a shower," and he sometimes noticed a "small residue of blood."

Generally, treatment records fail to show any evidence of large or thrombotic hemorrhoids, irreducible hemorrhoids, or hemorrhoids with excessive redundant tissue and frequent recurrences. On digital rectal examination in April 2006, for example, some "quiescent external hemorrhoid disease" was noted, but no other symptoms. In August 2007, a rectal examination showed mild external hemorrhoid, but no masses. Hemorrhoids were otherwise unproductive of any functional limitations. In March 2011, the muscular ring of the rectum appeared normal, as did the rectal walls.

During his February 2010 VA examination, the Veteran reported using stool softeners and Preparation H suppositories. The Veteran had a constant, sharp rectal pain, and rectal bleeding with bowel movements, losing "a couple drops of blood at a time." Overall, the Veteran was in "moderate discomfort" with trace rectal bleeding once weekly. There were no functional limitations associated with his hemorrhoids, which the examiner stated were "in good control," and in an April 2011 statement, the Veteran reported that the examiner had told him that it was "definitely obvious that [he] still ha[s] hemorrhoids."

In his April 2011 statement, the Veteran also noted that the in its September 2010 remand, the Board ordered a VA examiner to comment on the location of any hemorrhoids, their size, reducibility, thrombosis, and if there were any secondary fissure. On VA examination in April 2013, the Veteran reported that recurrent hemorrhoids - first treated in the 1980s - had been persisted into the present and were treated with over the counter medication. Bleeding occurred occasionally, approximately once a month, and was associated with constipation. The Veteran denied any history of anal fissures, and he had no anal perianal fistula, rectal structure, impairment of rectal structure control, or rectal prolapse. Physical examination confirmed the presence of small to moderate external hemorrhoids, without any scars associated with treatment. Hemorrhoids were not large or thrombotic, irreducible, or with excessive redundant tissue; bleeding was not persistent, nor productive of secondary anemia; and there were no fissures. 

The Veteran is competent to report on symptoms that are capable of lay observation, Layno v. Brown, 6 Vet. App. 465 (1994), and thus his endorsements of burning, aching, itching, and bleeding are competent and probative that such symptoms are occurring. However, there has been no evidence - to include in written or oral testimony from the Veteran - that hemorrhoids have been large or thrombotic, irreducible, or with excessive redundant tissue evidencing frequent recurrences. Without these symptoms, a compensable rating cannot be assigned. 38 C.F.R. § 4.114, Diagnostic Code (DC or Code) 7336.

Having evaluated hemorrhoids on a schedular basis, the Board has also considered whether referral for an extraschedular rating is warranted for the same. The schedular rating criteria used to rate the Veteran's service-connected hemorrhoids, reasonably describe and assess his disability level and symptomatology. The criteria rate the disability on the basis of frequency and severity as well as the presence or lack of secondary symptoms such as anemia due to bleeding and fissures. Thus, the demonstrated manifestations - namely mild to moderate hemorrhoids with bleeding no more frequently than once a week - are contemplated by the provisions of the rating schedule. The evidence does not show unique or unusual symptomatology regarding the Veteran's service-connected hemorrhoids that would render the schedular criteria inadequate. Additionally, the Veteran has not alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Nonetheless, the Board has fully considered the Veteran's additional service-connected disabilities of coronary artery disease, diabetes mellitus type ii, erectile dysfunction, chronic duodenal ulcer disease with cholecystectomy, tinnitus, peripheral neuropathy of the lower extremities, right ring finger fracture, degenerative disc disease of the lumbosacral spine, and bilateral cortical cataracts, in concluding that referral for consideration of an extraschedular rating is not warranted. The schedular evaluation is adequate, and referral for consideration of extra-schedular evaluation is not required. 38 C.F.R. § 3.321; Thun, 22 Vet. App. 111. 

Total Disability Rating Based on Individual Unemployability

The Veteran contends that his service-connected disabilities - which as stated above include coronary artery disease, diabetes mellitus type ii, erectile dysfunction, chronic duodenal ulcer disease with cholecystectomy, tinnitus, peripheral neuropathy of the lower extremities, right ring finger fracture, degenerative disc disease of the lumbosacral spine, hemorrhoids, and bilateral cortical cataracts - render him unable to maintain gainful employment. Most specifically, he has asserted that it is his coronary artery disease and diabetes led to his retirement in 2004 from being an electronics engineer, and have subsequently precluded him from gainful employment. 

A claim for TDIU is essentially a claim for an increased rating insofar as it acts as alternate way to obtain a total disability rating without recourse to a 100 percent evaluation under the rating schedule. Norris v. West, 12 Vet. App. 413, 420-21 (1999). TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.34l, 4.16(a) (2015). Where the combined rating percentage requirements are not met, entitlement to the benefits may be nonetheless considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b).

Prior to February 18, 2010, the Veteran's total combined rating was less than 60 percent - with no disabilities ratable at 40 percent - and he thus did not meet the schedular threshold for the assignment of TDIU under 38 C.F.R. § 4.16(a). Effective February 18, 2010, his combined rating has been 80 percent, meaning that the schedular rating threshold for the award of TDIU under 38 C.F.R. § 4.16(a) was met. Regardless of whether assignment arises under 38 C.F.R. § 4.16(a) or 38 C.F.R. § 4.16(b), the Board must initially assess whether the Veteran's service-connected disabilities have rendered him unable to secure or follow a substantially gainful occupation at any time during the period on appeal.

Marginal employment shall not be considered substantially gainful employment, and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2009); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

The Board finds that the Veteran has not been unable to secure or follow a substantially gainful occupation as a result of his service-connected disability at any time during the period on appeal, beginning in October 2006.

On VA examination in June 2010, the Veteran told the examiner that he had retired in 2005. The examiner opined that the Veteran's longstanding complaints of difficulty with night vision due to glare from diabetes-related cataracts "may impact his ability to work in the evening," but that he "should be able to initiate day time employment without restrictions." In contrast, a June 2012 examiner concluded that the Veteran's cataracts, peripheral neuropathy, and erectile dysfunction would have no impact on his ability to work.

In November 2013, the Veteran's complete claims file was reviewed, and the Veteran's "specific claim for unemployability" was considered by a VA examiner. He expressly considered not only ischemic heart disease, but also the Veteran's "other service connected conditions." He noted that a VA eye examiner had stated that the eye disability caused no functional limitations, that diabetes was "uncomplicated" other than by the peripheral neuropathy - which itself was mild and manifest only by mild sensory loss, without affecting strength or reflexes. This limitation was unlikely "to do more than mildly impair long walking," and there was no clinical evidence "indicating progression of any functional problems secondary to the lumbar disc disease." Regarding private cardiac records, the examiner noted normal left ventricular ejection fraction of over 60 percent, and commented that the Veteran's left ventricular hypertrophy was related to longstanding nonservice-connected hypertension rather than coronary artery disease. Based on his review of the record, cardiac findings demonstrated that the Veteran "should have at most only moderate limitation of exertion," and he concluded that "the Veteran's service connected conditions do not render him unable to secure and maintain substantial gainful employment."

In December 2014, the Veteran's private cardiac care provider observed that the Veteran was "currently being treated for coronary artery disease, aortic valve disorder, and mixed hyperlipidemia," and that "[d]ue to his medical conditions and recent decline in health, [he] recommend that [the Veteran] no longer work," because with continued work "his medical conditions will worsen thus causing more health issues."

In July 2015, the Veteran underwent a series of VA examinations relating to several service-connected disabilities. Over the course of these examinations, examiners opined that diabetes and erectile dysfunction did not impact his ability to work, though diabetic peripheral neuropathy rendered the Veteran unable to run, climb, or walk farther than one mile, meaning that "sedentary employment is feasible." These limitations were essentially duplicative of those due to coronary artery disease, namely an inability "to engage in moderately exertional tasks such as heavy lifting, climbing, [and] running." Coronary artery disease symptoms would nonetheless not prevent the Veteran from engaging in "mild exertional tasks and sedentary employment."

The VA examiner observed that the Veteran had "multiple co-morbid non-cardiac conditions, to include degenerative changes of the cervical and lumbar spine, degenerative changes of the [sacroiliac] joints, rheumatoid arthritis, chronic obstructive pulmonary disease, and diabetic peripheral neuropathy," not all of these are service-connected. Co-morbid conditions were reported to have "a large impact on the [V]eteran's overall functional status," and it was "likely that non-cardiac co-morbidities add to whatever limitation of activity/[Metabolic Equivalent of Task] is caused solely by ischemic heart disease." Because METs testing used to measure the Veteran's exertional limitations is "a measurement of global cardiopulmonary capacity, and given the absence of any theoretical basis for separating the effects of cardiac and his other conditions in limiting this capacity, it is not possible to provider an accurate estimated of METs based on ischemic heart disease alone."

The fact that METs testing is a systemic assessment of the Veteran's overall functional capacity renders the measurement especially probative in assessing the total impact of all of the Veteran's disabilities. On examination in July 2015, the lowest activity level that the Veteran reported dyspnea or fatigue was greater than 3-5 METs, equivalent to light yard work (weeding), mowing the lawn with a power mower, or a brisk walk. Though the examiner suggested that coronary artery disease alone would cause similar symptoms at an even higher level of METs, the Board notes that even at 3-5 METs sedentary employment remains feasible.

The Veteran is competent to report his symptoms and their perceived impact on his ability to maintain gainful employment. Layno, 6 Vet. App. 465. However, while his lay statements do carry some probative value, they must be weighed against the competent assessments of multiple VA examiners, all of whom have offered probative opinions that the Veteran remains capable of pursuing sedentary employment. Given the Veteran's employment history as an electronics engineer - an occupation that requires only minimal physical exertion - the Board finds those examination reports to be highly probative.

With regard to the December 2014 private opinion recommending that the Veteran "no longer work" due to "coronary artery disease, aortic valve disorder, and mixed hyperlipidemia," the opinion is competent to the extent that it was rendered by a cardiac healthcare professional. However, the conclusion drawn is inconsistent with the record, showing that service-connected cardiac symptoms have resulted in only limited restriction of physical activity, and furthermore fails to consider the nature of the Veteran's occupational history and experience.

Accordingly, the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and entitlement to TDIU - including under the extraschedular provisions of 38 C.F.R. § 4.16(b) - is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

ORDER

A compensable rating for hemorrhoids is denied. 

TDIU is denied.

____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs