﻿Citation Nr: AXXXXXXXX
Decision Date: 01/10/19 Archive Date: 01/10/19

DOCKET NO. 180822-130
DATE: January 10, 2019

ORDER

Entitlement to a rating in excess of 40 percent from April 25, 2017 to April 17, 2018 for service-connected thoracolumbar strain with muscle spasms (hereinafter “back disorder”) is denied.

Entitlement to a 40 percent rating, but no higher, prior to April 25, 2017 and from April 17, 2018 for service-connected back disorder is granted, subject to the rules and regulations governing the award of monetary benefits. 

Entitlement to an effective date earlier than July 25, 2016, for the grant of a total disability based on individual unemployability (TDIU) due to service-connected disabilities is denied.

FINDINGS OF FACT

1. For the entirety of the appeal period, the evidence is at least in equipoise as to whether Veteran’s back disorder has been manifested by limitation of flexion to 20 degrees, but has not resulted in ankylosis. 

2. Prior to July 25, 2016, the Veteran did not meet the regulatory criteria for consideration of a TDIU and the evidence during this period does not suggest that his service-connected disabilities rendered him totally unable to secure or maintain substantially gainful employment so as to warrant consideration of a TDIU on an extraschedular basis. 

CONCLUSIONS OF LAW

1. From April 25, 2017 to April 17, 2018, the criteria for a rating in excess of 40 percent for service-connected back disorder are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.71a, Diagnostic Codes (DC) 5237.

2. Prior to April 25, 2017 and from April 17, 2018, the criteria for a 40 percent rating, but no higher, for service-connected back disorder are met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.71a, DC 5237.

3. The criteria for an award of a TDIU prior to July 25, 2016 are not met. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.102, 3.400, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from August 2004 to February 2008. 

In November 2018 correspondence, the Veteran’s attorney appears to raise a claim for service connection for headaches. The Veteran and his attorney are advised that a claim for benefits must be submitted on the application form prescribed by the Secretary. 38 C.F.R. §§ 3.1(p), 3.155, 3.160.

1. Entitlement to a higher rating for service-connected back disorder. 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the veteran, as well as the entire history of the veteran’s disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as “staging the ratings.” See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40. It is important that when evaluating disabilities of the musculoskeletal system, functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements must be considered. See 38 C.F.R. § 4.40; DeLuca v. Brown, 8 Vet. App. 202 (1995). Consideration must also be given to weakened movement, excess fatigability and incoordination. 38 C.F.R. § 4.45.

It is the intent of the schedule to recognize painful motion with joint or periarticular pathology as productive of disability. It is also the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59.

The Veteran’s service-connected back disorder is currently rated under DC 5237 for lumbosacral strain, pursuant to the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a. Under the General Rating Formula, a 10 percent rating is warranted where there is forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for flexion of the thoracolumbar spine between 30 and 60 degrees, or combined range of motion of the thoracolumbar spine not greater than 120 degrees, or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a.

The Board must also analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit-of-the doubt in resolving each such issue shall be given to the veteran. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

In the July 2018 rating decision, the Agency of Original Jurisdiction (AOJ) continued the 20 percent rating prior to April 25, 2017, assigned a 40 percent rating effective April 25, 2017 to April 17, 2018, and returned the rating to 20 percent effective April 17, 2018 for the Veteran’s back disorder. The Board notes that the appeal period for the Veteran’s back disorder extends back to January 2016. See January 2016 Fully Developed Claim. The AOJ’s continuation of the 20 percent rating prior to April 25, 2017 was based on the May 2016 VA examination report; the increased 40 percent rating, effective April 25, 2017, was based primarily on the range of motion documented in an April 2017 private physical assessment; and the assignment of a 20 percent rating, effective April 17, 2018, was based primarily on the improvement in range of motion documented in the April 17, 2018 VA examination. The Veteran appealed this decision seeking a higher rating. As will be discussed more fully below, the Board finds the May 2016 and April 2018 VA examinations, relied on by the AOJ in assigning 20 percent ratings, to be insufficient for rating purposes. As such, in affording the Veteran the benefit-of-the doubt, the Board finds that a higher 40 percent rating is warranted for the entirety of the appeal period. 

In May 2016, the Veteran underwent a VA examination to evaluate the severity of his back disorder. The Veteran reported that he could not bend down like he used to and if he sat in his car for more than an hour or bent down he felt lots of tension and pain. He also indicated that he had not been able to bend down like he used to or carry a lot of weight, anything over 40 pounds. He did not report flare ups. Range of motion testing revealed no limitation of motion. There was no pain with weight bearing, no additional loss of range of motion after repetitive use testing, and no guarding or muscle spasm. The examiner indicated that it was not possible to determine, without resorting to mere speculation, the loss of range of motion with repetitive use over time. The examiner explained that this was not possible because the Veteran was not experiencing a flare-up. 

In the April 2017 private physical assessment, the Veteran reported progressively worsening back pain and intermittent pain that radiated into the lateral aspect of his calf. He also reported that his back was aggravated by bending, sitting greater than 20 minutes, and standing longer than 25 minutes. Range of motion testing revealed limitation of flexion to 20 degrees, extension to 5 degrees, right lateral bending to 25 degrees, and left lateral bending to 20 degrees. 

In the April 2018 VA examination, the Veteran reported symptoms consisting of spasms 4 days a week, arthritic pains, and stiffness. Range of motion testing revealed limitation of flexion to 60 degrees, extension to 10 degrees, right and left lateral flexion to 10 degrees, and right and let lateral rotation to 10 degrees. There was no additional loss of range of motion on repetitive use testing. The examiner found no invertebral disc syndrome (IVDS) and no ankylosis of the spine. The examiner indicated that it was not possible to determine, without resorting to mere speculation, the loss of range of motion with repetitive use over time or on flare-ups because there was no conceptual or empirical basis for making such a determination without directly observing function under those conditions. 

The Board notes, however, that it is insufficient to conclude that the requested opinion cannot be rendered without resorting to speculation based solely on the fact that the VA examination was not performed during a flare-up or after repetitive use over time. Sharp v. Shulkin, 29 Vet. App. 26 (2017). Rather, the examiner is obligated to elicit relevant information regarding the description of the Veteran’s occasionally aggravated symptoms and any additional functional loss with flare-ups and repeated use over time. Id. Consequently, the Board finds the May 2016 and April 2018 VA examinations insufficient for rating purposes. 

VA treatment records document chronic low back pain triggered by lifting, sitting, standing, and walking. See 2017 to 2018 VA Treatment records. 

In light of the evidence above and the governing legal authority, the Board finds that the evidence is at least in equipoise as to whether a higher 40 percent rating is warranted for the entirety of the appeal period. In pertinent part, the range of motion findings in the May 2016 and April 2018 VA examinations are insufficient and the next most contemporaneous evaluation of the Veteran’s back disorder (the April 2017 private physical assessment) documents limitation of flexion to 20 degrees. Such finding satisfies the criteria for a 40 percent rating. See 38 C.F.R. § 4.71a. 

For the entirety of the appeal period, however, a rating in excess of 40 percent is not warranted because at no point has the Veteran had ankylosis of the thoracolumbar or entire spine.

The Board acknowledges that, normally, when a VA examination is insufficient for rating purposes, the Veteran must be provided a new VA examination. See Barr v. Nicholson, 21 Vet. App. 303 (2007). However, in this instance, the Veteran is in receipt of a 40 percent rating, which is the highest schedular rating available for limitation of motion of the thoracolumbar spine. The Board therefore finds that a remand in order to obtain an examination that complies with Sharp would serve no useful purpose and the evidence of record is sufficient to adjudicate his claim. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991). 

2. Entitlement to an effective date earlier than July 25, 2016, for the award of a TDIU.

Generally, the effective date of an award based on an original claim, a claim reopened after a final disallowance, or a claim for increase, will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. An exception to this rule applies, however, under circumstances where evidence demonstrates that a factually ascertainable increase in disability occurred within the one-year period preceding the date of receipt of a claim for increased compensation. See 38 C.F.R. § 3.400(o)(2). In that regard, the law provides that the effective date of an award shall be the earliest date as of which it is factually ascertainable that an increase in disability had occurred (not necessarily the date of receipt of the evidence) if application is received within one year from such date. Id. 

A TDIU claim qualifies as a claim for increased disability compensation. The United States Court of Appeals for Veterans Claims (Court) determined that a TDIU award is an award of increased disability compensation for purposes of assigning an effective date. Wood v. Derwinski, 1 Vet. App. 367, 369 (1991); see also Hurd v. West, 13 Vet. App. 449 (2000); Norris v. West, 12 Vet. App. 413, 420-21 (1999). Additionally, pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009), a TDIU claim is also a component of any increased rating claim. Therefore, under Rice, entitlement to an earlier effective date for a TDIU must be considered in conjunction with any claim for an increased rating. 

A TDIU may be assigned when a disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16 (a). If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

However, even if a veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), rating boards should refer to the Director, Compensation Service for extra-schedular consideration in all cases where the veteran is unable to secure or follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16(b).

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. In determining whether unemployability exists, consideration may be given to the Veteran’s level of education, special training and previous work experience, but not to his age or to any impairment caused by nonservice- connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In the July 2018 rating decision, the Agency of Original Jurisdiction (AOJ) granted entitlement to a TDIU, effective July 25, 2016, based on the Veteran’s July 25, 2016 claim for entitlement to a TDIU. The record indicates, however, that the Veteran’s January 26, 2016 claim for an increased rating for a back disorder was pending at the time the Veteran submitted his claim for a TDIU. As such, pursuant to Rice, the Veteran’s claim for a TDIU must be considered in conjunction with the January 26, 2016 claim for an increased rating for a back disorder. Thus, the Board has determined that the date of receipt of the claim on appeal is January 25, 2016. 

The Board emphasizes, however, that the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400. Thus, although the claim was received on January 26, 2016, the Board must also be cognizant of the date on which entitlement to a TDIU arose. For the award of a TDIU, the date entitlement arose is the date the Veteran met the schedular requirements to be eligible for a TDIU. The record clearly establishes that the Veteran met the schedular requirements for a TDIU as of July 25, 2016 (his combined disability rating was 80 percent, with at least one disability rated at 40 percent). Prior to July 25, 2016, the Veteran’s combined disability rating was 60 percent. He was service connected for posttraumatic stress disorder (PTSD) (30 percent), back disorder (20 percent from April 2, 2014), right lower extremity radiculopathy (10 percent), right elbow residual fracture (0 percent), spider bite residuals (0 percent), left hand injury residuals (0 percent), and left knee Osgood Schlatter’s disease (0 percent). A combined 60 percent rating does not satisfy the threshold minimum percentage rating requirements for the assignment of a TDIU. 

As indicated above, however, even when the percentage requirements are not met, the Board must still consider whether entitlement to a TDIU arose, on an extraschedular basis. 38 C.F.R. § 4.16(b). In this regard, although entitlement to an extraschedular TDIU is determined in the first instance by VA’s Director of Compensation Service (Director), the RO and the Board are tasked with making the threshold determination that referral to the Director for extraschedular consideration is appropriate. Id.; see Bowling v. Principi, 15 Vet. App. 1, 10 (2001).

Prior to July 25, 2016, the Board finds that the Veteran’s service-connected disabilities did not render him unable to secure and follow a substantially gainful occupation and entitlement to a TDIU on an extraschedular basis is not warranted. 

In pertinent part, prior to July 25, 2016, the Veteran’s service-connected PTSD caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational task. See December 2014 VA Examination report. The Veteran also reported that he had good concentration and focus on tasks and, at the time, he was working on the weekends at a bar and training two friends at the gym. 

Moreover, prior July 25, 2016, the Veteran’s back disorder was evaluated by VA on two occasions, in December 2014 and May 2016. In the December 2014 VA examination, the Veteran reported peristent low/mid back pain and occasional sharp pain down his right leg. He also reported that he had difficulties with prolonged walking. He was assessed with a lumbosacral strain and radiculopathy. The examiner found that the Veteran’s back disorder and radiculopathy would affect his ability to perform heavy physical activities and prolonged walking might be affected. Thereafter, in the May 2016 VA examination, the Veteran reported that he had difficulty sitting in a car for an hour and has not been able to bend down like he used to. He also indicated that he could carry up to 40 pounds. Ultimately, the examiner determine that the Veteran’s back disorder did not impact his ability to work. The Board acknowledges that the May 2016 VA examination was found, above, to be inadequate for rating the Veteran’s back disorder. However, this finding was limited to the range of motion findings reported during that examination. 

The Board also acknowledges that in the Veteran’s April 2018 Application for Increased Compensation based on Unemployability, he indicated that he has been unable to work since July 2015 due to his back disorder and joints. Nevertheless, the Board finds that the more probative medical evidence of record shows that, prior to July 25, 2016, the Veteran’s service-connected disabilities did not prevent substantially gainful activity. Although the Board does not deny that the Veteran’s service-connected psychiatric and physical disabilities impacted his ability to work, the record shows that the Veteran was at least capable of performing the work functions of a personal trainer. 

Based on the foregoing evidence, the Board finds that the preponderance of the evidence is against the claim for an effective date prior to July 25, 2016 for a TDIU. As such, the benefit-of-doubt doctrine is not applicable and the claim must be denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD P. E. Metzner, Associate Counsel