﻿Citation Nr: AXXXXXXXX
Decision Date: 02/25/19 Archive Date: 02/25/19

DOCKET NO. 181203-1172
DATE: February 25, 2019

ORDER

An effective date earlier than August 31, 2010 for the award of service connection for coronary artery disease (CAD) is denied.

An initial rating in excess of 30 percent for CAD from August 31, 2010 to October 19, 2015 is denied.

A rating in excess of 60 percent for CAD from October 19, 2015 to July 17, 2018 is denied.

FINDINGS OF FACT

1. The Veteran is a Nehmer class member who has been diagnosed with CAD, a type of ischemic heart disease (IHD).

2. The earliest claim that reasonably may be construed as a claim for IHD was received on August 9, 2007.

3. Entitlement to service connection for IHD arose in January 2016, after the August 9, 2007 claim. 

4. From August 31, 2010 to October 19, 2015, the Veteran’s CAD was not manifested by more than one episode of acute congestive heart failure in the past year, or; a workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent.

5. From October 19, 2015 to July 17, 2018, the Veteran’s CAD was not manifested by chronic congestive heart failure, or; a workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent.

CONCLUSIONS OF LAW

1. The criteria for an effective date prior to August 31, 2010 for the award of service connection for CAD have not been met. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.114, 3.151, 3.155, 3.400, 3.816. 

2. From August 31, 2010 to October 19, 2015, the criteria for a rating in excess of 30 percent for CAD were not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.55, 4.56, 4.104, Diagnostic Code (DC) 7005. 

3. From October 19, 2015 to July 17, 2018, the criteria for a rating in excess of 60 percent for CAD were not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.55, 4.56, 4.104, DC 7005. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty in the United States Army from January 1966 to November 1967, with service in the Republic of Vietnam. He selected the Higher-Level Review lane when he submitted the RAMP election form on July 17, 2018. Accordingly, the October 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

 Earlier Effective Date

Generally, the effective date for the grant of service connection based upon an original claim, a claim reopened after final disallowance, or a claim for increase is either the day following separation from active service or the date entitlement arose if the claim is received within one year after separation from service; otherwise it will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110 (b)(1); 38 C.F.R. § 3.400 (b). Additionally, in a claim for increase or to reopen, a report of examination or hospitalization may be accepted as an informal claim for benefits, but this regulation does not apply here. 38 C.F.R. § 3.157 (b). 

A claim is a formal or informal communication, in writing, requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit. 38 C.F.R. § 3.1 (p). VA amended its regulations on March 24, 2015 to require that all claims governed by VA's adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. See 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments, however, are only effective for claims and appeals filed on or after March 24, 2015. As this appeal was filed prior to that date, the amendments are not applicable and the regulations in effect prior to March 24, 2015 will be applied.

Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by VA, from a claimant, her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris, may be considered an informal claim. Such an informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year after the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155; Norris v. West, 12 Vet. App. 413 (1999). 

In cases involving presumptive service connection due to herbicide agent exposure, there is an exception to the provisions set forth above. 38 C.F.R. § 3.816 sets forth the effective date rules required by orders of the United States District Court in the class-action case of Nehmer v. U. S. Department of Veterans Affairs. See Nehmer v. U.S. Veterans Admin., 32 F. Supp. 1404 (N.D. Cal. 1989) (Nehmer I); Nehmer v. U.S. Veterans Admin., 32 F. Supp. 2d 1175 (N.D. Cal 1999) (Nehmer II); Nehmer et al v. Veterans Admin. of the Gov't of the U.S., 284 F. 3d 1158 (9th Cir. 2002) (Nehmer III). 

For purposes of this section, a Nehmer class member includes a Vietnam veteran who has a covered herbicide agent-related disease. If a Nehmer class member is entitled to disability compensation for a covered herbicide agent disease, the effective date of the award, if the class member's claim for disability compensation for the covered herbicide agent disease was either pending before the VA on May 3, 1989, or was received by VA between that date and the effective date of the statute or regulation establishing a presumption of service connection for the covered disease, will be the later of the date such claim was received by VA or the date the disability arose, unless the claim was received within a year following separation from service. 

In other words, notwithstanding the fact that there was a prior final denial of the claim, or that the claim was submitted prior to the effective date of the newly established presumption for a covered herbicide agent disease, the effective date of service connection may be as early as the date of the original claim, as opposed to the date of the petition to reopen or the effective date of the new law.

A claim will be considered a claim for compensation for a particular covered herbicide agent disease if: (1) the claimant's application and other supporting statements and submissions may reasonably be viewed, under the standards ordinarily governing compensation claims, as indicating an intent to apply for compensation for the covered herbicide agent disability; or (ii) VA issued a decision on the claim, between May 3, 1989, and the effective date of the statute or regulations establishing a presumption of service connection for the covered disease, in which VA denied compensation for a disease that reasonably may be construed as the same covered herbicide agent disease for which compensation has been awarded. § 3.816(c). Thus, there is no intent requirement to establish a claim under § 3.816(c)(2)(ii) for the purpose of entitlement to retroactive benefits pursuant to the Nehmer provisions. 

The final rule made clear that the effective dates of awards of IHD under 38 C.F.R. § 3.309 (e) are governed by the Nehmer provisions. See 75 Fed. Reg. at 53203. Ischemic heart disease was added to the list of presumptive disabilities effective August 31, 2010. See 75 Fed. Reg. 53, 202 (August 31, 2010). 

If the above requirements are not met, the effective date of the award shall be determined in accordance with 38 C.F.R. § 3.400. 

The Veteran separated from service in November 1967. A claim for service connection for a heart disability was not received within one year of date of discharge. 

The Veteran first filed a claim for service connection for a heart disability in an August 9, 2007 Statement in Support of Claim (VA Form 21-4138). The claim was denied in a June 2009 rating decision. The Veteran perfected an appeal of that rating decision.

In August 2015 and December 2016, the Board remanded the claim for further development.

In November 2017, the Board granted service connection for CAD, finding that the current CAD was presumptively associated with the Veteran’s exposure to herbicide agents in Vietnam.

In January 2018, the RO implemented the Board’s award of service connection. A rating of 30 percent for CAD was assigned from August 31, 2010, and a rating of 60 percent was assigned from October 19, 2015. August 31, 2010 was selected as the effective date for the award of service connection because this was the date that ischemic heart disease was added to the list of presumptive disabilities.

In February 2018, the Veteran expressed his timely disagreement with the effective date set forth in the January 2018 rating decision. 

On July 17, 2018, VA received his RAMP Opt-In Election Form, wherein he requested a “Higher-Level Review” of the issues.

In October 2018, the RO issued a higher-level review decision, denying an earlier effective date for the award of service connection and higher ratings for CAD.

As applicable to RAMP appeals, the Board observes that in the October 2018 higher-level review adjudication, favorable findings were not rendered as to the claim for an earlier effective date.

In December 2018, within one year of the higher-level review decision, the Veteran appealed the RAMP rating decision to the Board and selected the “Direct Review” option, for a direct review of the evidence considered by the RO.

Here, it is clear that the Veteran served in the Republic of Vietnam and was granted service connection for CAD based on his presumed exposure to herbicide agents during such service. He filed a claim that was received by VA after May 3, 1989 and before August 31, 2010, the effective date of the regulation establishing presumptive service connection for IHD. As such, the provisions of 38 C.F.R. § 3.816 (c)(2) apply. 38 C.F.R. § 3.816 (c)(2) goes not to provide that the effective date of the award will be the later of the date such claim was received by VA, or the date the disability arose. 

The Veteran filed his claim for service connection for a heart disorder on August 9, 2007. The Board has considered whether any document prior to this date could serve as an informal claim. On review of the record however, there exists no claim for any heart condition submitted prior to August 9, 2007. 

Regarding when entitlement arose, the Board has reviewed the record but can point to no documentation discussing the issue of IHD prior to January 2016. Under the applicable regulation, ischemic heart disease includes, but is not limited to acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina. 38 C.F.R. § 3.309(e). 

Specifically, VA and private treatment records prior to January 2016 were carefully reviewed, and none indicate the presence of IHD; the record is devoid of such heart conditions as myocardial infarctions, atherosclerotic cardiovascular disease including coronary artery disease, coronary bypass surgery, or stable, unstable or Prinzmetal's angina. On VA heart examination in April 2009, IHD, as defined by VA regulation, was not found. On VA heart examination in October 2015, the examiner specifically determined that the Veteran’s heart conditions did not qualify within the generally accepted medical definition of IHD. On VA hypertension examination in January 2016, the examiner noted there was no CAD present.

However, January 2016 private treatment records, obtained after the January 2016 VA opinion, include a coronary stenting report showing preoperative and postoperative diagnoses of CAD, an abnormal EKG with the notations “[c]annot rule out anterior infarct,” and a cardiac catheterization report showing plaque within the coronary arteries. Thereafter, May 2016 and March 2017 VA outpatient treatment records documented CAD status-post January 2016 stent placement. 

Given the foregoing, the Veteran is not entitled to an earlier effective date for the award of service connection for his CAD. As previously explained, the effective date for a covered herbicide agent disease for a Nehmer class member is the date that the claim was received by VA or the date the disability arose, whichever is later. See 38 C.F.R. § 3.816 (c)(2). The Veteran was assessed with IHD (January 2016) after he filed his claim for benefits (August 2007), making the date entitlement arose the later of the two events. As such, a date earlier than the August 31, 2010 date set by the RO cannot be assigned. 

Moreover, effective dates of awards on the basis of liberalizing laws are assigned in accordance with the facts found, but usually are not earlier than the effective date of the change (here, August 31, 2010). 38 U.S.C. § 5110(g); 38 C.F.R. § 3.114. The remaining provisions of 3.114 have been considered but would not entitle the Veteran to an earlier effective date. 38 C.F.R. § 3.114(a)(1) does not apply as the claim was not reviewed within one year from the effective date of the law. 38 C.F.R. § 3.114(a)(2) applies where the claim is reviewed more than one year after liberalization and provides an effective date of one year prior to the date of administrative review or Veteran request if the Veteran met all of the requirements for eligibility as of the date of the liberalizing law. 

To the extent the Veteran reports the presence of IHD prior to August 31, 2010, as a layperson, he does not have the requisite expertise to provide a competent opinion as to whether he had IHD. This type of matter requires medical expertise. 38 C.F.R. § 3.159(a)(1) (competent medical evidence means evidence provided by a person who is qualified through education, training or experience to offer medical diagnoses, statements, or opinions). 

The pertinent legal authority governing effective dates is clear and specific, and the Board is bound by such authority. As, on these facts, no effective date for the award of service connection for IHD earlier than August 31, 2010, is assignable, the claim for an earlier effective date must be denied.

Higher Ratings

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disability specified is considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 

In January 2018, the RO granted service connection for CAD. A rating of 30 percent was assigned from August 31, 2010, and a rating of 60 percent was assigned from October 19, 2015. The Veteran appealed this rating decision, and the ratings were continued in the October 2018 higher-level review decision.

As this is a RAMP appeal based on Direct Review by the Board, the time frames, or “stages,” of the assigned ratings must be clearly defined for proper analysis. The time frame for the 30 percent rating is from the award of service connection on August 31, 2010 until October 19, 2015 when the 60 percent rating was assigned. The time frame for the 60 percent rating is from October 19, 2015 until July 17, 2018 when the RAMP election form was received by VA (applicable to appeals in the higher-level review lane). 

Also, as applicable to RAMP appeals, the Board observes that in the October 2018 higher-level review adjudication, favorable findings were not rendered as to the claims for higher ratings. 

The Veteran's CAD has been rated under DC 7005. Under this code, evaluations depend, at least in part, on the workload that results in certain symptoms. This workload is expressed in “METs.” One MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note (2).

A 30 percent rating is assigned where a workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; with evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or x-ray.

A 60 percent rating is assigned where there has been more than one episode of acute congestive heart failure in the past year, or; a workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; there is left ventricular dysfunction with an ejection fraction of 30 to 50 percent.

A 100 percent rating is assigned with evidence of chronic congestive heart failure, or; a workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; there is left ventricular dysfunction with an ejection fraction of less than 30 percent.

The probative evidence includes VA examination reports of April 2009, June 2011, and October 2015. The Veteran’s VA and private treatment records were reviewed, but do not contain information sufficient for rating the disability under the applicable rating criteria as they do not contain MET workloads, nor do they include evidence of congestive heart failure. 

Considering the pertinent evidence in light of the governing legal authority, the Board finds the preponderance of the evidence is against a rating in excess of 30 percent from August 31, 2010 to October 19, 2015, and a rating in excess of 60 percent from October 19, 2015 to July 17, 2018. 

On VA heart examination in April 2009, there was no history of congestive heart failure. Exercise stress testing was conducted, and the METs measurement was 7.3, indicative of normal functional capacity. An electrocardiogram showed that the left ventricular ejection fraction was greater than 50 percent. Further cardiac testing, including by Holter monitor, revealed a left ventricular ejection fraction of greater than 55 percent.

On VA diabetes examination in June 2011, the examiner noted there was no history or evidence of chronic congestive heart failure.

On VA heart examination in October 2015, there was no history of congestive heart failure. The examiner stated that the April 2009 echocardiogram reflected the Veteran’s current functional status, and showed a left ventricular ejection fraction of greater than 55 percent. The examiner also noted the April 2009 exercise stress testing and stated that this stress test most accurately reflected the Veteran’s current cardiac functional level when compared to the interview-based METs test. The interview-based METs test showed that the lowest activity level at which the Veteran reported dyspnea, fatigue, dizziness, or syncope was greater than 3-5 METs. 

As none of the criteria contemplated by a 60 percent rating were shown from August 31, 2010 to October 19, 2015, the preponderance of the evidence is against a rating higher than 30 percent for this time frame. As none of the criteria contemplated by a 100 percent rating were shown from October 19, 2015 to July 17, 2018, the preponderance of the evidence is against a rating higher than 60 percent for this time frame. 

The Board can point to no other diagnostic code that would provide a basis for the assignment of ratings in excess of 30 percent and 60 percent for the Veteran’s CAD. Many of the diagnostic codes pertaining to the heart contain overlapping rating criteria. To the extent there are codes with different criteria, the record does not raise the presence of those disabilities or the symptomatology contemplated by those codes. 

Finally, the Board has considered whether a claim for a total disability rating based on individual unemployability (TDIU) has been raised under Rice v. Shinseki, 22 Vet. App. 447 (2009).

A TDIU claim, stemming from an Application for Increased Compensation Based on Unemployability (VA Form 21-8940), was denied in the June 2009 rating decision. The Veteran perfected a timely appeal of that denial. In August 2015, December 2016, and November 2017, the Board remanded the claim for a TDIU for further development. 

On July 17, 2018, VA received his RAMP Opt-In Election Form, where he requested a higher-level review of all eligible issues, which included the TDIU claim. The RO determined that further development was required. 

In January 2019, the RO issued a higher-level review decision, denying a TDIU. The time window for appealing this RAMP rating decision has not yet expired. Thus, as the claim remains pending and to avoid any duplication of appellate decisions on the claim for a TDIU, the Board will not adjudicate a Rice TDIU claim here.

In reaching the above decisions the Board considered the doctrine of reasonable doubt, however, the doctrine is not for application.

 

M. TENNER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Smith, Counsel